PETER BROCK, Respondent-Appellant, v WILLIAM BUA, Respondent, and JAGUAR GRAPHICS, INC., Appellant-Respondent.

Second Department, October 19, 1981

APPEARANCES OF COUNSEL

*Clark, Gagliardi & Miller, P.C. (Lawrence T. D'Aloise* of counsel), for appellant-respondent.

*Rosen, Hacker & Nierenberg (Jonathan S. Hacker* on the brief), for respondent-appellant.

DAMIANI, J.

This is an action to recover damages for libel. In early 1978 the plaintiff, Peter Brock, was the general manager of the Sheraton Plaza Inn in the City of New Rochelle. The individual defendant, William Bua, was the president and a stockholder of the defendant Jaguar Graphics, Inc. Defendant Bua met and spoke with plaintiff concerning a program of local advertising to promote the hotel's banquet and other facilities. On May 5, 1978 Bua wrote a letter to the senior vice-president for public relations of the Sheraton Corporation upon the letterhead of "Jaguar Graphics, Inc." and signed it as "President" of Jaguar. The letter alleged that Jaguar had prepared a newspaper advertisement and a brochure, and that Brock had run the newspaper advertisement but had not paid for it and had plagiarized the brochure. The letter claimed that Brock was "a brash, rude discourteous and possibly dishonest young man."

On July 7, 1978 plaintiff commenced this action by serving defendant Bua with a summons and complaint naming him as the only defendant and charging that the letter of May 5, 1978 was libelous.

On December 18, 1979 plaintiff's motion for leave to add Jaguar Graphics, Inc., as a party defendant and to serve a supplemental summons and amended complaint upon it was granted without opposition. The supplemental summons and amended complaint were served upon the corporation on January 17, 1980. The amended complaint, in substance, reiterated the allegations of libel against defendant Bua, and alleged that the defamation in the letter of May 5, 1978 was uttered in connection with the business of the corporate defendant. The answer of Jaguar Graphics, which was served on or about February 19, 1980, denied the material allegations of the complaint and, *inter alia,* asserted the affirmative defense of the Statute of Limitations.

By notice of motion dated April 22, 1980, defendant Jaguar Graphics moved to dismiss the amended complaint against it upon the ground that plaintiff's claim was

barred by the Statute of Limitations. The plaintiff cross-moved for summary judgment against both defendants and to strike the affirmative defense of the Statute of Limitations asserted by the corporate defendant. Special Term denied the motion in chief, granted the branch of the cross motion seeking dismissal of the affirmative defense and denied the branch of the cross motion seeking summary judgment, stating, in relevant part: "The amended complaint merely modified the original complaint to the extent of adding the corporation as a party defendant. The contention, therefore, that the service of the supplemental summons and amended complaint on the corporate defendant more than a year after the alleged libel is time barred [CPLR 215] is without merit in view of CPLR 203 [e] which provides: 'A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences or series of transactions or occurrences, to be proved pursuant to the amended pleading.' Under the facts herein, the amended complaint relates back to the claim in the original complaint."

The appeal of the defendant Jaguar Graphics presents the question of when a claim asserted against a new party in an amended pleading is to be deemed interposed. Discussion of this issue requires a basic understanding of the purposes behind the Statute of Limitations. Those purposes are more fully discussed in *Connell v Hayden* (83 AD2d 30), but suffice it to say that the salient reason for limiting the time within which an action may be brought concerns the effect of long time delays upon the availability and reliability of evidence and the consequent prejudice to the fair and accurate determination of factual disputes (see 1 Weinstein-Korn-Miller, NY Civ Prac, par 201.01, p 2-7). Statutes of Limitation were devised "to afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action." *(Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427, 429.) In short, the Statute of Limitations presumes that a proper investigation and preparation of a defense cannot

be undertaken after the expiration of the period of limitation.

Special Term relied upon subdivision (e) of CPLR 203 to hold that the date of interposition of plaintiff's claim against Jaguar Graphics related back to the date that the claim asserted in the original complaint was interposed against defendant Bua. That subdivision had no counterpart in prior practice statutes. It was recommended by the drafters of the CPLR merely "to overcome the effect of *Harriss* v. *Tams*" (258 NY 229) and related cases (see Second Preliminary Report of Advisory Commission on Practice and Procedure, 1958, p 51). In the *Harriss* case the Court of Appeals held that interposition of a claim asserted for the first time in an amended pleading did not relate back to the date of service of the summons for purposes of the Statute of Limitations if it "introduced a cause of action upon a different obligation or liability, and for different conduct from that specified in the original complaint." (258 NY, at p 243.) *Harriss* involved only the assertion of a new legal theory against a person already a party and not the addition of a new party. At its core was the view that a defendant need only investigate the underlying facts insofar as they were relevant to the allegations of the cause of action asserted in the original complaint and that an amendment which changed legal theories and was based upon "different" conduct would prejudice a defendant by requiring a belated investigation of other factual circumstances after the expiration of the Statute of Limitations (see 258 NY, at pp 244-245).

By overruling *Harriss v Tams (supra),* the practical effect of subdivision (e) of CPLR 203 was to necessitate that a defendant now make a comprehensive timely examination of all the facts regarding the transactions, occurrences, or series of transactions or occurrences of which the plaintiff's complaint gives notice, rather than confining his preparation of a defense to only those facts disclosed in plaintiff's complaint. If the plaintiff then subsequently sought to amend his complaint to allege new causes of action arising from those transactions or occurrences, the defendant could no longer rely upon the Statute of Limitations but he would be able to prepare a defense to them on

the merits. Subdivision (e) is not applicable to the assertion of claims against new parties in amended pleadings for the reason that timely notice to defendant A of the transactions or occurrences underlying plaintiff's claim, sufficient to enable him to prepare a defense, cannot be automatically imputed to defendant B who was served after the expiration of the statute. For this reason we have held that subdivision (e) alone does not permit the date of interposition of a claim asserted against a new defendant in an amended pleading to relate back to the date of claim interposition against the original defendant (*Trybus v Nipark Realty Corp.*, 26 AD2d 563, 564; cf. *Capellino Abattoir, Inc. v Lieberman,* 70 AD2d 713, 714).*

---

* In *Trybus v Nipark Realty Corp.* (26 AD2d 563) the issue of the applicability of CPLR 203 (subd [e]) to amendments involving new parties arose in connection with a proposed amendment against a third-party defendant. In that case A sued B and, within the period of limitation for A's main claim, B impleaded C as a third-party defendant, serving him with a third-party complaint and a copy of A's original complaint against B (see CPLR 1007). After expiration of the period of limitations, A sought to amend his complaint to allege a cause of action against C as well, and the latter raised the Statute of Limitations as a defense. It was argued that under CPLR 203 (subd [e]) the date of the interposition of A's claim against C should relate back to the date of interposition of his claim against B, but the majority of this court in *Trybus* held that it did not, stating that: "the claim sought to be asserted in the proposed amended complaint did not relate back to the *date of service of the original complaint,* pursuant to CPLR 203 (subd. [e]), since the original pleading did not give notice *to appellant* 'of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading'." (*Trybus v Nipark Realty Corp., supra,* p 564; emphasis added.) Mr. Justice HOPKINS dissented in *Trybus,* arguing that C had notice of the transactions to be proved within the time limited for the commencement of an action against him by A. Thereafter, Professor McLaughlin, in his practice commentaries to McKinney's CPLR (McKinney's Cons Laws of NY, Book 7B, CPLR, C203:11, p 124) suggested, apparently upon the basis of the dissent in *Trybus,* that, at the least, the date of claim interposition should relate back to the date upon which C was added as a third-party defendant and was served with a copy of A's original complaint against B, thereby giving notice of the transactions underlying A's suit. The Appellate Division, Fourth Department, adopted Professor McLaughlin's reasoning in *Lancaster Silo & Block Co. v Northern Propane Gas Co.* (75 AD2d 55, 60; contra *Knorr v City of Albany,* 58 AD2d 904; *Ward v Marino,* 64 Misc 2d 44, affd 37 AD2d 698). The argument that the relation back of the date of claim interposition provided for in CPLR 203 (subd [e]) should be to the date B added C as a third-party defendant rather than to the date A's claim was interposed against B, was not specifically considered by either the majority or dissent in *Trybus,* and we do not propose to pass on it now. We note, however, that while such a construction would be consistent with the purposes of the Statute of Limitations, because on the date C was added as a third-party defendant he received notice of the transactions or occurrences upon which A's suit was based, the subdivision in question specifically states that the relation back shall be to "the time the claims in the *original* pleading [A's complaint against B] were interposed" (CPLR 203, subd [e]; emphasis added). The instant case does not involve third-party practice, but *Trybus* applies here because it clearly holds that where a new party is added, CPLR 203 (subd [e]) will not permit a relation back to the date the plaintiff's claims were interposed against the original defendant.

The CPLR contains another relation back provision with respect to defendants served after the expiration of the Statute of Limitations. CPLR 203 (subd [b]) provides, in substance, that a claim against a codefendant "united in interest" with a timely served defendant shall relate back to the date plaintiff's claim was interposed against the latter. In this case, plaintiff properly obtained leave to serve a supplemental summons and complaint, which were duly served upon Jaguar Graphics, Inc., making it a codefendant of the original defendant Bua. Clearly, Jaguar Graphics is "united in interest" with its employee Bua (see *Connell v Hayden,* 83 AD2d 30, *supra; Hatch v Cherry-Burrell Corp.,* 274 App Div 234, 241; *Plumitallo v 1407 Broadway Realty Corp.,* 279 App Div 1019; *Zeitler v City of Rochester,* 32 AD2d 728; *Jordan v Westhill Cent. School Dist.,* 42 AD2d 1043).

In the case of *Shaw v Cock* (78 NY 194) it was held that in order for claim interposition against a codefendant to relate back to the date of timely service upon a defendant with whom he is united in interest, the codefendant must have been named in the process previously served upon the defendant. In discussing section 99 of the Code of Procedure of 1848, the predecessor of the unity of interest rule now contained in CPLR 203 (subd [b]), the Court of Appeals there stated, in relevant part *(supra,* pp 197-198): "It is plain from the language of section ninety-nine that it only applies to defendants who are parties to the action constructively commenced by the delivery of the summons to the sheriff at the time of such delivery, or who are made parties before the statute has run against the claim upon which the action is brought. The delivery of a summons to the sheriff will not prevent the running of the statute in favor of persons who, although they may be liable upon the obligations upon which the action is brought, are not named as defendants in the summons, and it can make no difference whether the omission was by design or through ignorance, mistake or inadvertence. The commencement of an action against A. upon a cause of action against B. will not arrest the running of the statute against the latter. Where several persons are jointly liable upon contract or otherwise and a suit is brought against a part only of the

persons so liable, the court has power under section 173 of the Code to amend the process, pleadings or proceedings by bringing in the omitted parties, but the suit is only commenced as to such new parties when they are brought in by the amendment. If, between the time of the commencement of the suit and the time when the new parties are brought in, the period of limitation has expired, they may plead the statute in bar of their liability, although the defense may not be available to the original defendants. It would be unreasonable in such case to construe the amendment as relating to the time of the commencement of the action so as to deprive new parties of the defense of the statute and their right to plead it is saved without any express reservation in the order of amendment. By section ninety-nine service of the summons on one defendant is the commencement of the action as to each defendant who is a joint contractor or otherwise united in interest with him and prevents the running of the limitation thereafter against all the defendants named in the summons who stand in the relation mentioned to the defendant served."

Because Jaguar Graphics was first named in a supplemental summons and was not denominated a party defendant in the summons served upon defendant Bua, the rule in *Shaw v Cock (supra)* would prevent the application of the unity of interest rule in this case. The holding in *Shaw* rests upon the notion that "fairness" requires potential defendants to be apprised of legal action against them within a fixed and certain period of time after the underlying event or transaction (see Hogan, California's Unique Doe Defendant Practice: A Fiction Stranger Than Truth, 30 Stanford L Rev 51, 88-89; Ann., 8 ALR2d 6, 112-115).

*Shaw v Cock (supra)* was decided more than 100 years ago, in 1879, at a time of much greater legal formalism than now prevails. It focused solely upon whether the codefendant's name appeared upon a summons when that paper was timely served upon the defendant, despite the fact that the codefendant was not served and did not thereby receive actual knowledge that plaintiff had commenced an action against him until after the expiration of the Statute of Limitations. It is our view that the old mechanistic rule of *Shaw v Cock* (and its progeny in this

court, *McCabe v Queensboro Farm Prods.*, 15 AD2d 553, affd 11 NY2d 963), turning as it did solely upon whether the codefendant's name appeared on the original summons, should be overruled and replaced by a new formulation giving more consideration to the purpose underlying Statutes of Limitation. As discussed above and in *Connell v Hayden* (83 AD2d 30, *supra*), the primary purpose behind the limitation of actions is to relieve defendants of the necessity of preparing a defense when "evidence has been lost, memories have faded, and witnesses have disappeared" *(Telegraphers v Railway Express Agency,* 321 US 342, 349; see, also, Developments in the Law: Statutes of Limitations, 63 Harv L Rev 1177, 1185). The rationale underlying the "unity of interest" rule is different from that underlying the acquisition of jurisdiction by service of a summons and, unlike the latter, it does not turn upon proof of actual notice to the late-served codefendant that plaintiff is seeking a judgment against him *(Connell v Hayden, supra)*. Rather, it rests upon the sound conclusion that where parties are united in interest their defenses will be the same and they will either stand or fall together with respect to plaintiff's claim. Timely notice to one of two such defendants will enable him to investigate within the statutory period all the defenses which are available to both. That being the case, timely notice to one is charged to the other and it is not "unfair", from a Statute of Limitations viewpoint, to apply the claim interposition rule of CPLR 203 (subd [b]) to newly added codefendants who are united in interest with the original named defendant.

In considering whether the defense of the Statute of Limitations should bar a plaintiff's claim against a new party, the Federal courts adopted a three-pronged test later codified in subdivision (c) of rule 15 of the Federal Rules of Civil Procedure (see cases cited in Note: Federal Rule of Civil Procedure 15[c]: Relation Back of Amendments, 57 Minn L Rev 83, 91-93, ns 34-35, and accompanying text; 3 Moore, Federal Practice [2d ed], par 15.15 [4.-1], [4.-2]; cf. *Board of Trustees of Common School Dist. No. 2 of Town of Dickinson v Commissioner of Educ. of State of N.Y.,* 40 AD2d 239, affd 33 NY2d 601; *Matter of Ferry v Boniface,* 43 AD2d 758). A similar test should be applied in

situations such as the one at bar. Pursuant thereto, a claim asserted against a new party will relate back to the date upon which plaintiff's claim was previously interposed against the original named defendant despite the fact that the former was not named in the process served upon the latter only if (1) both claims arose out of the same conduct, transaction or occurrence (cf. CPLR 203, subd [e]), (2) the new party is "united in interest" with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits (see Ann., 11 ALR Fed 269) and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well. The notice required by the second prong of the test may be informal because it is intended only to satisfy the rationale underlying the Statute of Limitations (see Fed Rules Civ Pro, rule 15, subd [c]; Advisory Committee's Note, 39 FRD 82-83; 3 Moore, Federal Practice [2d ed], par 15.15 [4.-2], pp 15-225 through 15-226; Note: Federal Rule of Civil Procedure 15[c]: Relation Back of Amendments, 57 Minn L Rev 83, 97; Haworth, Changing Defendants in Private Civil Actions Under Federal Rule 15[c] — An Ancient Problem Lingers On, 1975 Wis L Rev 552, 572) and not the more stringent notice requirement underlying the acquisition of jurisdiction over a defendant by the service of a summons.

The third prong requires the plaintiff to show that his failure to join the proper parties at the outset was not due to his own inexcusable neglect (see 3 Moore, Federal Practice [2d ed], par 15.15 [4.-1], p 15-221; *Nayer v Robertshaw-Fulton Controls Co.,* 195 F Supp 704). In so doing the rule recognizes the desirability of commencing an action against all defendants within the period of limitation and it excuses the belated commencement thereof against one or more defendants united in interest with a defendant who was timely served only if the delay in adding the new defendant or defendants is not attributable to the plaintiff. Where the identity of potential defendants who are united in interest is known to the plaintiff he must treat them equally by bringing timely suit against them all, thereby

enabling them to co-operate in the investigation of his claim and the preparation of their joint defense. A contrary rule would permit a plaintiff to deny the defendant the benefits of concerted action early in the case by bringing suit only against the defendant who, for financial or other reasons, would be least likely to conduct an in-depth investigation of the claim and then to join the other defendant or defendants at a later date when the passage of time had reduced the availability of evidence. On the other hand, there are cases in which the nature of the underlying conduct, transaction or occurrence makes ascertainment of all the proper defendants impossible within the period of limitations or where one potentially liable person has concealed or misled the plaintiff as to his identity until the expiration of the statute. In those cases the law balances the plaintiff's right to sue all those responsible for his injury against the inconvenience to the new defendant of defending against a belated claim, and in light of the fact that the new party is united in interest with a defendant who was timely served and who did have the opportunity to make an investigation within the period of limitations, it finds the plaintiff's interests to be the weightier and opts to remove the bar of the Statute of Limitations.

In addition, the third prong of the foregoing test also involves the subsidiary purpose of the Statute of Limitations as one which puts stale claims to repose, thereby freeing a potential defendant from the fear that his involvement in events of the distant past may be the subject of litigation against him. This aspect of the Statute of Limitations reflects a social policy designed to give security and stability to human affairs and thereby to allow an individual or entity to plan for the future free from old claims and obligations. Thus, where such a potential defendant knows that other persons have been subjected to timely suit arising out of an incident in which his participation was manifest to the aggrieved party, he should quite justifiably be entitled to conclude that the failure to also bring suit against him within the period of limitations means that for whatever reason his trespasses have been forgiven by the plaintiff and that the matter has been laid to rest as far as he is concerned. Conversely, where such a

potential defendant knows or should know that his involvement in the events in question was not clear to the plaintiff and that failure to bring suit against him as well was therefore the result of excusable mistake upon the plaintiff's part, that defendant cannot justifiably conclude that the plaintiff has, in fact, opted not to sue him. In such situations "[t]his policy of repose, designed to protect defendants, is * * * outweighed [because] * * * the interests of justice require vindication of the plaintiff's rights." (*Burnett v New York Cent. R.R. Co.*, 380 US 424, 428.) Finally, the third prong of the test promotes judicial economy by preventing the interruption of the normal course of lawsuits by proceedings to add parties who could have been present from the outset and whose joinder will inevitably result in further delays for the purpose of discovery, etc.

We now turn to an application of the test enunciated above to the facts of this case. It is clear that the claim against both defendants arises out of the same transaction, namely the preparation of the promotional material and the allegedly libelous letter the defendants sent to plaintiff's superior when he refused to pay. Defendant Bua is the president of Jaguar Graphics, and although plaintiff commenced this action against him only in his individual capacity, his knowledge of the pendency of the action must be charged to the corporation with whom he is united in interest. The third prong of the test has not been met, however, for the simple reason that the allegedly libelous letter was written on stationery bearing the corporate letterhead and was signed by defendant Bua as "President, Jaguar Graphics, Inc." Plaintiff cannot possibly have been mistaken as to the identity of the corporation as a proper party to sue (see *Ingenito v Bermec Corp.*, 441 F Supp 525, 553). Plaintiff could and should have commenced this action against Jaguar Graphics within the one-year period specified in CPLR 215 (subd 3).

Accordingly the order under review should be modified. The defense of the Statute of Limitations asserted in the answer of defendant Jaguar Graphics was well taken, its motion for summary judgment dismissing plaintiff's amended complaint against it should have been granted, that branch of plaintiff's cross motion seeking to strike its

first affirmative defense should have been denied, and plaintiff's amended complaint should have been dismissed as to defendant Jaguar Graphics.

MOLLEN, P. J., HOPKINS, WEINSTEIN and THOMPSON, JJ., concur.

Order of the Supreme Court, Westchester County, entered August 19, 1980, modified, on the law, (1) by deleting the provisions which denied the motion of Jaguar Graphics, Inc., for summary judgment dismissing the complaint and granted the branch of plaintiff's cross motion which sought to strike the Statute of Limitations defense pleaded by the corporate defendant, and (2) by substituting therefor provisions granting the motion for summary judgment and denying the aforesaid branch of the cross motion. As so modified, order affirmed, with $50 costs and disbursements to Jaguar Graphics, Inc.