Louis Virelli, Individually and as Parent and Natural Guardian of Natalie Virelli, an Infant, et al., Respondents, v Goodson-Todman Enterprises, Ltd., et al., Appellants.

Third Department, January 5, 1989

### APPEARANCES OF COUNSEL

*Ricken, Goldman, Sussman, Blythe (Alan N. Sussman* of counsel), for appellants.

*DeGraff, Foy, Conway, Holt-Harris & Mealey (David F. Kunz* of counsel), for respondents.

### OPINION OF THE COURT

Per Curiam.

On January 13, 1985, defendant Daily and Sunday Freeman (hereinafter Freeman) published an article entitled "Tormented by a Drug-Crazed Daughter" as 1 in a series of 27 articles on drug abuse written by defendant Sheila Isenberg. The instant lawsuit was precipitated by this article. Essentially, plaintiffs maintain that they agreed to be interviewed by Isenberg, but that Isenberg breached an agreement not to disclose their identities and to permit plaintiff Louis Virelli to review the article prior to publication. They contend that the article contained identifiable portrayals of plaintiffs and misquoted and misrepresented information as a result of which they were readily identified, humiliated in the community and exposed to public ridicule, threats and contempt. The causes of action alleged are characterized as invasion of privacy, negligence and intentional infliction of emotional distress.

Freeman and defendant Ingersoll Publications Company (hereinafter Ingersoll) moved to dismiss the complaint for lack of personal and subject matter jurisdiction on the premise that Freeman was not a corporate entity and Ingersoll was neither the owner nor proprietor of the newspaper.[1] On February 6, 1986, plaintiffs cross-moved for leave to join defendant Goodson-Todman Enterprises, Ltd. (hereinafter Goodson) as the proper owner defendant and to serve a supplemental summons and second amended complaint. Freeman and Ingersoll opposed this application to the extent that the one-year

---

1. Simultaneously, plaintiffs served an amended complaint without leave (CPLR 3025 [a]) in which the only change was to correct the name of Ingersoll Publications to Ingersoll Publications Company. Supreme Court considered defendants' motion as one to dismiss the amended complaint.

Statute of Limitations bar extended to the invasion of privacy and intentional infliction of emotional distress causes of action.[2] Supreme Court granted both the motion to dismiss and plaintiffs' cross motion. Goodson and Isenberg (hereinafter defendants) have appealed from this order. Defendants then moved to dismiss the second amended complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action in defamation. The denial of this motion gave rise to the second appeal.

■ Defendants initially contend that, having granted the motion by Freeman and Ingersoll to dismiss the complaint, Supreme Court no longer enjoyed jurisdiction over the action, as a matter of law, to permit plaintiffs to add Goodson as a party. We disagree. The complaint was still extant because Isenberg remained a defendant who had answered and the relief sought in plaintiffs' cross motion was granted simultaneously in the same decision/order.

■ Next, defendants maintain that Supreme Court improperly permitted plaintiffs to add Goodson as a party defendant. We hold otherwise, albeit on a slightly different basis. Supreme Court adopted the three-prong standard delineated in *Brock v Bua* (83 AD2d 61) for applying the relation-back rule set forth in CPLR 203 (b). In *Brock,* the Second Department enumerated a revised formula for applying CPLR 203 (b), holding that a claim against a new party may relate back to the date that a plaintiff's claim was interposed against an originally named defendant, but only if "(1) both claims arose out of the same conduct, transaction or occurrence * * * (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits * * * and (3) the new party knew or should have known that, but for an *excusable* mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well" *(supra,* at 69 [emphasis supplied]).

In this case, the focus is solely on the third prong of the *Brock* standard.[3] Essentially, defendants maintain that plain-

---

2. The negligence cause of action, which enjoys a three-year Statute of Limitations, was not directly affected by this limitations objection.

3. [2] We recognize that CPLR 203 (b) becomes operative only where some viable service has been achieved against an existing party *(see, Connor v Fish,* 91 AD2d 744). Consequently, service on Freeman, a nonentity, failed

tiffs' mistake in naming Freeman and Ingersoll as defendants instead of Goodson is inexcusable since a display notice appeared in every Freeman issue, identifying Goodson as the publisher. Plaintiffs' only explanation for the misidentification is that the attorney who drafted the summons and complaint had never seen the descriptive announcement. We recognize that similar excuses have been rejected outright in *Brock* and its progeny *(see, County of Rockland v Spring Val. Water Co.,* 134 AD2d 317, 319; *Berg v Mather Mem. Hosp.,* 131 AD2d 618, 619; *Liverpool v Averne Houses,* 114 AD2d 840, 841-842, *affd* 67 NY2d 878; *Brock v Bua, supra,* at 71). Nonetheless, we cannot agree that the nature of plaintiffs' excuse is determinative of the issue presented.

The *Brock* standard, with which we generally concur, is premised on the counterpart provision set forth in Federal Rules of Civil Procedure, rule 15 (c) *(see, Brock v Bua, supra,* at 68-69). Notably, rule 15 (c) simply provides that the new party "knew * * * that, but for a *mistake* concerning the identity of the proper party, the action would have been brought against the party" (emphasis supplied). Unlike *Brock,* the Federal rule does not qualify the nature of the mistake. In our view, *Brock* has superimposed an excuse qualification which shifts the focus away from the primary question of whether the new party had actual notice of the claim within the statutory limitations period. We decline to do so here. In *Schiavone v Fortune* (477 US 21), a case involving a similar, untimely failure to name a publisher as a captioned defendant, the United States Supreme Court recently confirmed that the linchpin in cases of this nature is not whether the mistake in service was excusable, but whether "notice within the limitations period" had been achieved *(supra,* at 31). Analyzing rule 15 (c), the Supreme Court held that relation back requires four predicates, including a showing that the new "party must or should have known that, but for a *mistake* concerning identity, the action would have been brought against it" *(supra,* at 29 [emphasis supplied]). Noticeably absent is any requirement of an excuse for faulty service. Accordingly, while we apply the third prong of the *Brock*

to activate this provision. Service on Ingersoll was similarly deficient for there is absolutely no indication as to any existing relationship between Ingersoll and Goodson. Nonetheless, service on Isenberg, Goodson's employee, was timely and Goodson makes no claim that Isenberg and Goodson are not "united in interest" *(see, Connell v Hayden,* 83 AD2d 30, 46-49; *Brock v Bua,* 83 AD2d 61, 66).

standard, we do so absent the "excusable" mistake requirement.

Here, plaintiffs have averred that both Isenberg and James Plugh, Goodson's publisher, were personally served with process on January 13, 1986, the last day on which the Statute of Limitations was set to expire (cf., Schiavone v Fortune, supra, at 29). As indicated, plaintiffs' motion to add Goodson was made shortly thereafter on February 6, 1986. On these facts, there is little doubt that Goodson had actual notice of the lawsuit within the limitations period and sustained no prejudice in preparing a defense. It is inconceivable that Goodson was misled into believing that plaintiffs had "opted not to sue [it]" (Brock v Bua, 83 AD2d 61, 71, supra). Accordingly, we conclude that Supreme Court properly added Goodson as a party defendant.

The second appeal pertains to defendants' motion to dismiss the second amended complaint for failure to state a cause of action in defamation. In opposing the application, plaintiffs emphasized that defendants mischaracterized the nature of the complaint which, in effect, propounded claims for invasion of privacy, negligence and intentional infliction of emotional distress, not defamation. In addressing defendants' challenge, we accord the pleadings a liberal construction in plaintiffs' favor, assuming the truth of the allegations made (see, Lynch v Bay Ridge Obstetrical & Gynecological Assocs., 72 NY2d 632, 637).[4]

■ A cause of action for invasion of privacy requires the use of a name, portrait or picture of a living person for trade or advertising purposes, without consent (Civil Rights Law §§ 50, 51). The courts have consistently held that the "terms [trade or advertising purposes] should not be construed to apply to publications concerning newsworthy events or matters of public interest" (Stephano v News Group Publ., 64 NY2d 174, 184). Since the challenged article pertains to the societal scourge of drug abuse, unquestionably a newsworthy item, we find that plaintiffs have failed to state a viable privacy claim (see, Freihofer v Hearst Corp., 65 NY2d 135, 140-141; Stephano v News Group Publ., supra).

■ We reach a similar conclusion with respect to plaintiffs' third cause of action for intentional infliction of emotional

4. Our review has been complicated by the parties' failure to include the disputed article in the record on appeal. As a result, our analysis proceeds solely on the basis of the pleadings.

distress. This claim is couched in terms of defendants' failure "to act with due care and in a reasonable fashion", allegations which clearly fall short of the outrageous, extreme behavior required to substantiate a claim of this nature *(see, Freihofer v Hearst Corp., supra,* at 143; *Fischer v Maloney,* 43 NY2d 553; *see also, Hustler Mag. v Falwell,* 485 US —, 108 S Ct 876).

We also find that dismissal should have been granted as to plaintiffs' remaining cause of action, expressly grounded in negligence, alleged in their second amended complaint. The claim in that cause of action is that Isenberg obtained the information from plaintiffs for the article published in Freeman under promises of anonymity and the right to review the article before publication. It is alleged that in violation of these promises, defendants negligently reported facts in the article through which plaintiffs' identities were revealed and, also in the article, negligently distorted and misrepresented the information plaintiffs gave Isenberg. It is unmistakably clear that plaintiffs solely allege that defendants' fault consisted of ordinary negligence, i.e., that defendants "failed to follow *reasonable* standards for information gathering and dissemination" and "failed to act with *due* consideration for the standards ordinarily followed by responsible parties" (emphasis supplied).

There is also no question that the only damages particularized in the second amended complaint are injuries to reputation, the traditional province of defamation tort law, and the humiliation and other emotional distress from public disclosure of embarrassing personal facts normally associated with the common-law tort of invasion of privacy *(see,* Restatement [Second] of Torts § 652H). Indeed, plaintiffs' allegations are inseparable from the torts of defamation and invasion of privacy with one exception, the claim that the unconsented disclosures violated Isenberg's promise to keep their identities secret. To that degree, in their negligence cause of action plaintiffs have pleaded what amounts to a tortious breach of confidence *(see,* Note, *Breach of Confidence: An Emerging Tort,* 82 Colum L Rev 1426 [1982]; *see also, MacDonald v Clinger,* 84 AD2d 482; *Doe v Roe,* 42 AD2d 559, *affd* 33 NY2d 902). Moreover, as we have already concluded, the subject matter of the article, as described in but not attached to the complaint, clearly pertains to a matter of legitimate public concern, i.e., the terrible impact of drug abuse.

Where, as here, recovery is sought against news media defendants for injuries to reputation and for emotional dis-

tress arising out of publication on a matter of public concern, ordinary negligence is a constitutionally insufficient basis upon which to impose liability. Contrary to plaintiffs' contention, the heightened standard of media fault required under the constitutional guarantees of freedom of speech and of the press is not applicable only to defamation actions. The underlying rationale for this and the other added procedural protections of the media from civil liability for what they publicize on matters affecting public affairs is that "debate on public issues should be uninhibited, robust, and wide-open" *(New York Times Co. v Sullivan,* 376 US 254, 270); therefore, "erroneous statement is inevitable in free debate, and * * * must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive' " *(supra,* at 271-272, quoting *National Assn. for Advancement of Colored People v Button,* 371 US 415, 433). These considerations are equally compelling to shield freedom of expression from *any* effort by the State to recognize and enforce other competing interests in the form of granting civil damage recovery, for in all such cases the "chilling effect" of the threat of liability will result in media self-censorship "antithetical to the First Amendment's protection of true speech on matters of public concern" *(Philadelphia Newspapers v Hepps,* 475 US 767, 777; *see, New York Times Co. v Sullivan, supra,* at 279). "The test is not the form in which state [restrictive] power has been applied but, whatever the form, whether such power has in fact been exercised" *(New York Times Co. v Sullivan, supra,* at 265).

Consistent with the broader applicability of the procedural protections to media defendants already discussed, but first applied in the context of defamation actions, these protections have been expressly extended by the United States Supreme Court to actions under the New York right of privacy statute (Civil Rights Law §§ 50, 51; *see, Time, Inc. v Hill,* 385 US 374, 387-388), to actions for intentional infliction of emotional distress *(Hustler Mag. v Falwell,* 485 US —, —, 108 S Ct 876, 880-881, *supra),* and to both criminal prosecutions and civil damage actions arising out of media violations of State confidentiality laws *(see, Smith v Daily Mail Publ. Co.,* 443 US 97, 103; *Cox Broadcasting Corp. v Cohn,* 420 US 469, 495). Various courts have likewise extended freedom of speech and press guarantees to media defendants in common-law invasion of privacy cases *(see, Rinsley v Brandt,* 700 F2d 1304; *Gilbert v Medical Economics Co.,* 665 F2d 305; *Virgil v Time, Inc.,* 527

F2d 1122). We see no reason why these principles should not equally apply where, as here, the only aspect of plaintiffs' claim distinguishing it from defamation and invasion of privacy is the alleged breach of Isenberg's promise to self-censor the content of the article so that plaintiffs' identities would remain confidential *(see, Cullen v Grove Press,* 276 F Supp 727, 729 [Mansfield, J.]; Note, *Breach of Confidence: An Emerging Tort,* 82 Colum L Rev 1426, 1466-1468 [1982]).

As a matter of State constitutional law, plaintiffs' allegations, couched exclusively in terms of ordinary negligence as to both the alleged disclosures by defendants of identifying information and false statements, all pertaining to matters of legitimate public concern, are patently insufficient to withstand dismissal. In *Gertz v Robert Welch, Inc.* (418 US 323), the United States Supreme Court held that ordinary negligence is a constitutionally sufficient fault standard of liability under the 1st Amendment of the Federal Constitution in the case of a defamation suit by a private person plaintiff against a news media defendant for publication on a matter of public concern. However, it expressly left to the individual States the decision whether to impose a higher standard of culpability *(supra,* at 345-347). New York has done so, requiring establishment in such cases that the "publisher acted in a *grossly irresponsible manner* without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" *(Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199 [emphasis supplied]; *see, Gaeta v New York News,* 62 NY2d 340). Plaintiffs have not alleged, even in conclusory fashion, that this heightened standard of fault was violated by defendants here *(cf., Bruno v New York News,* 68 AD2d 987, 988). Accordingly, dismissal must be granted as to this cause of action. Despite their failure to request permission to replead in the event of dismissal, we would under the circumstances, however, grant plaintiffs leave to replead, conditioned upon their showing before Supreme Court that they have sufficient factual grounds to support their cause of action *(see, Maney v Maloney,* 101 AD2d 403, 405; *Piffath v Esposito,* 58 AD2d 577).

MAHONEY, P. J., CASEY, WEISS, LEVINE and HARVEY, JJ., concur.

Order entered March 25, 1987 affirmed, without costs.

Order entered November 20, 1987 reversed, on the law and the facts, motion granted and second amended complaint

dismissed, with leave to plaintiffs to replead their second cause of action upon the condition that they show before the Supreme Court, within 30 days after service of a copy of the order to be entered upon this court's decision with notice of entry, that they have sufficient grounds to support their cause of action.