B.S. LIVINGSTON EXPORT CORPORATION, Plaintiffs,

v.

M/V OGDEN FRASER, et al., Defendants.

OGDEN FRASER TRANSPORT, INC., Third–Party Plaintiff,

v.

RASCATOR MARITIME, S.A., and Dr. Miles A. Galin, Third–Party Defendants.

No. 87 Civ. 8865 (RPP).

United States District Court, S.D. New York.

Dec. 29, 1989.

Robert E. Goldman, Peter Sullivan, Speno Goldman Goldberg Corcoran & Steingart, P.C., Mineola, N.Y., for third-party defendant, Dr. Miles A. Galin.

W. Shelby Coates, Jr., Oyster Bay, N.Y., for third-party defendant, Rascator Maritime, S.A.

M. Florence Herard, Burlingham Underwood & Lord, New York City, for third-party plaintiff, Ogden Fraser Transport, Inc.

ROBERT P. PATTERSON, Jr., District Judge.

This is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### Background

On June 30, 1980, B.S. Livingston Export Corporation (Livingston) filed a complaint in the Eastern District of Louisiana seeking $9,165 in damages from Rascator Maritime, S.A. (Rascator), the M/V OGDEN FRASER and the M/V OGDEN FRASER's owner, Ogden Fraser Transport, Inc. (Ogden). In 1981, Ogden cross-claimed against Rascator, seeking indemnification for any amount for which Ogden might be held liable to Livingston.[1]

The suit arose from the shipment of Livingston's cargo from New Orleans, Louisiana to Bombay, India aboard the M/V OGDEN FRASER, at a time when Rascator, a company owned and controlled by Dr. Miles A. Galin (Dr. Galin), had sub-time chartered the ship. The case was voluntarily stayed by consent of all parties until the outcome of *Dow Chemical Pacific v. Rascator Maritime*, 594 F.Supp. 1490 (S.D.N.Y.1984). The *Dow Chemical* case involved the same voyage, although damages to a different plaintiff's cargo was at issue. The long history of the *Dow Chemical* case in this Circuit provides a detailed account of the facts of the voyage. *See Dow Chemical*, 594 F.Supp. 1490 (S.D.N.Y.1984), modified, 609 F.Supp. 451 (S.D.N.Y.1984), aff'd in part and rev'd in part, 782 F.2d 329 (2d Cir.1986), on remand, 640 F.Supp. 882 (S.D.N.Y.1986) and 118 F.R.D. 345 (S.D.N.Y. 1988). The essential finding in that litigation is that before the ship reached Bombay, Rascator and Dr. Galin were responsible for the voyage making an unauthorized detour to Cadiz, where the court found substantial losses of cargo occurred.

---

1. The Ester Shipping Co., Ltd. also was named as a defendant and third party defendant in the original complaint and cross-claim. Subsequently all claims against Ester have been dismissed. *See* Ogden Ex. D.

At issue in this case is a shortage of 25,250 kilograms of steel, allegedly valued at approximately $9,165.

After the Second Circuit affirmed all of the findings of fact and conclusions of law in *Dow Chemical*, except those pertaining to attorneys' fees, this case was transferred by consent of all parties to the Southern District of New York. On June 24, 1987, Livingston and its insurer, Royal Globe Insurance Company, settled with Ogden. Ogden paid Livingston $7,500 in return for the dismissal of Livingston's claim against Ogden and the assignment to Ogden of Livingston's right to recovery against Rascator. On January 6, 1989, Ogden moved to amend its cross-claim to add Dr. Galin as a third-party defendant and to seek indemnity for the $7,500 settlement. The Court granted the motion and preserved Dr. Galin's right to assert defenses in his answer and by subsequent motion. Ogden now moves for summary judgment on its amended cross-claim.

Discussion

I. Statutes of Limitations

Dr. Galin asserts that the cross-claims in the amended cross-claim are not viable against him under the applicable statutes of limitations. The Carriage of Goods by Sea Act (COGSA) and state common law claims against him accrued in either 1980 or 1981 and can be viable only if the relation back doctrine applies. The relation back doctrine enables the 1989 amended pleading to relate back to the date of the original, timely-filed, cross-claim.

In *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986), the Supreme Court held that, under Federal Rule of Civil Procedure 15(c), four factors were necessary to satisfy the Relation Back Doctrine:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for the mistake concerning identity, the action would

have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

The first factor is satisfied because the alleged transactions in the original and amended cross-claim are nearly identical.

Concerning the other factors, the Second Circuit observed, " 'The linchpin [of relation back] is *notice*, and *notice within the limitations period*.' 477 U.S. at 31, 106 S.Ct. at 2385 (emphasis added)." *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1024 (2d Cir.1989). The Second Circuit in *Allbrand* further stated that most courts have "permitted ... imputed notice" to satisfy the notice requirement. 875 F.2d at 1025.

One traditional ground for establishing imputed notice, which the Supreme Court did not address in *Schiavone*, is an identity of interest between the party named in the original complaint and the party named in the amended pleading. *Id.* (explaining 477 U.S. at 29, 106 S.Ct. at 2384). An identity of interest is established if there is "substantial structural and corporate identity, such as shared organizers, officers, directors, and offices, *see, e.g., Travelers Indem. Co. v. United States*, 382 F.2d [103] at 106 [(10th Cir.1967)]." *Id.*

Dr. Galin received imputed notice by virtue of the identity of his interests with those of Rascator. In *Dow Chemical*, Judge Duffy held:

Dr. Galin treated Rascator as his alter ego particularly when he drained Rascator of the profits of his fraud. His bankers, at his instruction, treated Rascator as his alter ego in assisting his iniquitous schemes. Justice demands that the corporate veil be pierced to hold the main culprits liable for their illegal acts.

594 F.Supp. at 1499. In view of these findings, Dr. Galin not only had an identity of interest with Rascator, but also should have known in 1980 that the action by Livingston against Rascator should have been brought against him. Accordingly, the identity of interest rule applies in this case and the amended complaint survives

the federal statute of limitations on COG-SA claims.

In New York State, CPLR § 203(b) provides for the principle of relation back to apply under similar circumstances:

"(1) both claims arose out of the same conduct transaction or occurrence ... (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his own defense on the merits ... and (3) the new party knew or should have known that, but for excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well."

*Virelli v. Goodson–Todman Enterprises,* 142 A.D.2d 479, 536 N.Y.S.2d 571, 573 (3d Dept.1989) (quoting *Brock v. Bua,* 83 A.D.2d 61, 443 N.Y.S.2d 407, 412 (2d Dept. 1981)) (citations and emphasis omitted). The first and second factors are the same as in the federal test.

■ The only additional condition precedent to invoking the New York relation back doctrine is excusable neglect. The failure to add Dr. Galin as a third-party defendant until after the statute of limitations had run was excusable because the finding that Dr. Galin and Rascator were one in the same was only established by the resolution of the *Dow Chemical* litigation, during which the *Livingston* case was stayed.[2]

## II. Duty of Indemnity

Rascator and Dr. Galin deny they owe Ogden a duty of indemnity. In *Dow Chemical,* Judge Duffy determined that Ogden was liable *in rem* for any loss of cargo aboard the M/V OGDEN FRASER due to the actions of Rascator. Based on Second Circuit caselaw, Judge Duffy held that with regard to those losses, "Ogden as owner of the Ogden Fraser, however, is fully indemnified by Rascator." 594 F.Supp. at 1498 (citing *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1017 (2d Cir.1972)). Judge Duffy also held that Dr. Galin was an indemnitor because he acted as the alter ego of Rascator. *Id.* at 1498–99.

■ Under principles of collateral estoppel, *see Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), Dr. Galin and Rascator would owe Ogden a duty of indemnity in this case if the damages to Livingston are due to the actions of Rascator. Third-party plaintiff argues that Rascator is responsible for the damages based upon (a) the Bill of Lading's recitation of the contents of Livingston's cargo loaded at New Orleans, Ex. F., (b) the findings in *Dow Chemical* that Rascator was responsible for loss and pilferage of cargo during the detour to Cadiz, 594 F.Supp. at 1496–97 & n. 7, and (c) the Survey Report conducted in the port of Bombay of the cargo which had been loaded in New Orleans, Ex. G. According to the Bill of Lading, Rascator departed from New Orleans with 202,150 kilograms of steel.[3] The Bombay Survey Report states that 200,000 kilograms of steel left New Orleans for Bombay, but that only 174,750 kilograms arrived. The missing 25,250 kilograms of steel is the subject matter of this lawsuit. In *Dow Chemical,* a bill of lading, a Bombay survey report and evidence of loss and pilferage in Cadiz formed the basis for the court's finding that there was a shortage in cargo for which Rascator and Galin were responsible. *See* 594 F.Supp. 1497 & n. 7. The findings concerning the detour to Cadiz are applicable in this case under collateral estoppel principles. *See Parklane Ho-*

---

2. Those reasons which justify invoking the relation back doctrine also justify the rejection of defendant's contention that equitable maritime laches should apply to the cross-claim against Dr. Galin.

3. Rascator and Dr. Galin contend that there is no basis for a finding that approximately 200,-000 kilograms of steel left New Orleans because

the Bill of Lading predates the actual arrival of the M/V OGDEN FRASER in New Orleans. However, the rule of law in the Second Circuit is that bills of lading issued before a vessel's arrival in the port are "ratified" as valid once the cargo is accepted by the charterer. *See* 594 F.Supp. at 1498 (citing *Demsey & Associates, Inc.,* 461 F.2d at 1015).

*siery Co., Inc. v. Shore, supra.* Accordingly, there exists a sufficient basis for granting summary judgment on the issue of whether there was a shortage of cargo for which Rascator and Dr. Galin were responsible and therefore Rascator and Dr. Galin must indemnify Ogden for the damage.

■ Lastly, Rascator and Dr. Galin deny that they are required to indemnify Ogden for this particular settlement. Under *Atlantic Richfield Co. v. Interstate Oil Transport,* 784 F.2d 106 (2d Cir.1986), if the settlement is not preceded by notice to the indemnitor and an offer to the indemnitor of an opportunity to take over the defense, then the settling indemnitee is only entitled to indemnity upon a showing (a) of its actual liability and (b) of the reasonableness of the settlement. There is no question of Ogden's *in rem* liability to Livingston. 594 F.Supp. at 1498.[4] Third-party defendants Dr. Galin and Rascator disclaim, however, that there is a sufficient showing that settlement of $7,500 for the loss of 25,250 kilograms of steel is reasonable. Evidence submitted as to the value of the lost steel is the $9,165 figure used in Livingston's complaint and in the insurance claim. *See* Ex. G. In addition, the Bombay Survey Report, Ex. G., valued the shipment of 200,000 kilograms at $60,000. The proportionate value of the shortage of 25,250 kilograms would therefore be $7,575. Even if the lower figure of $7,575 is relied upon, the settlement on June 24, 1987 for $7,500 represents a substantial discount from the computation of damages after seven years of interest. Since the settlement was reached by opposing parties as a compromise, it is accepted by the Court as reasonable.

■ The final issue is whether Ogden is entitled to attorneys' fees in addition to indemnification for a reasonable settlement. Upon remand from the Second Circuit, Judge Duffy stated the law on attorneys' fees applicable to this case:

> The Second Circuit has consistently included attorney's fees in the amount which a charterer or subcharterer owes to the owner or charterer when an indemnification judgment has been entered.

640 F.Supp. at 885 (citing *Nichimen Company v. M.V. Farland,* 462 F.2d 319 (2d Cir.1972)). *See also Dow Chemical,* 782 F.2d at 345 (citing *Nichimen Company, supra; David Crystal, Inc. v. Cunard Steam–Ship Co.,* 339 F.2d 295, 300 (2d Cir.1964), cert. denied, 380 U.S. 976, 85 S.Ct. 1340, 14 L.Ed.2d 271 (1965)). Under that rule of law, Ogden is entitled to attorneys' fees.

In light of the long period of time this action has been pending and the vigor with which this claim has been defended, the figure of $5,674.24 identified in Ogden's affidavit as the amount of legal expenses incurred in the *Livingston* suit by Ogden seems eminently reasonable. Accordingly, it is allowed.

### Conclusion

Summary judgment is granted on all issues and third-party plaintiff is entitled to its request for a judgment for $7,500 plus attorneys' fees in the amount of $5,674.24.

The third-party plaintiff will submit a Judgment on notice to third-party defendants within ten days of the entry of this opinion.

SO ORDERED.

---

**4.** The settlement agreement between Ogden and Livingston states:

> It is expressly understood and agreed that the payment aforementioned is made purely by way of compromise and settlement and is no way [sic] to be construed as an admission of liability for the loss hereinabove described on the part of Ogden Fraser Transport, the M/V OGDEN FRASER and the M/V LARA, which in any event they expressly deny.

Ex. H. Despite that statement, the collateral estoppel effect of *Dow Chemical* is that Ogden is liable *in rem* for the damages to the cargo. 594 F.Supp. at 1498.