*354 OPINION OF THE COURT
David O. Boehm, J.
Third-party defendant, Gannett Company, Inc., is moving for summary judgment dismissing the third-party complaint of Strong Memorial Hospital and Dr. William Valenti. Third-party plaintiffs, in opposing the motion, also request summary judgment in their favor.
A first-party action was initially brought by Cornell Anderson, now deceased, against Strong, Dr. Valenti and Gannett stemming from the publication of Anderson’s photograph in the Democrat & Chronicle, a Gannett newspaper in Rochester. Anderson’s action for libel and invasion of privacy against Gannett was dismissed. Thereafter, Strong and Valenti commenced a third-party action against Gannett, which then brought this motion for summary judgment. That motion was held in abeyance until completion of the trial of the bifurcated first-party action.
Following a nonjury trial, the first-party plaintiff’s estate was awarded damages of $35,000 against Strong and Valenti for breach of the confidential patient-physician privilege.
The court now turns its attention to Gannett’s motion, which seeks to dismiss the claims for indemnification or contribution in the third-party action against it for negligence, negligent misrepresentation, breach of contract, and causing the breach of the physician-patient privilege by Gannett’s claimed negligence, carelessness, recklessness and culpable conduct.
The facts have been fully set forth in this court’s opinion dealing with the first-party action (140 Misc 2d 770) and will not be repeated here. Suffice it to say, that the first-party plaintiff was being treated by Valenti at the Infectious Disease Unit of Strong which is involved with Aids research and treatment. In connection with a story on the work being done there, Anderson’s photograph was taken by a Gannett photographer upon the express assurance given by the Gannett photographer and a Gannett reporter to Valenti and to Anderson that he would not be recognizable. However, when the story and photograph were published two days later, Anderson was recognized by members of his family and friends. The caption under the photograph read "Dr. William Valenti of Strong Memorial Hospital’s Infectious Disease Unit conducts an examination of a patient. Valenti’s chief responsibility is *355 caring for AIDS patients”. At the time, although Anderson was HIV positive, he did not have AIDS.
As noted, the theories of liability invoked here against Gannett by the third-party plaintiffs are not associated with the law of defamation. Rather, they seek contribution or indemnification from Gannett for the damages for which they were held liable to the first-party plaintiff. Although Gannett may not have owed a duty to the first-party plaintiff under the theory of liability advanced by him in his complaint, apportionment in this third-party action is an appropriate remedy (see, Garrett v Holiday Inns, 58 NY2d 253).
The third-party complaint in its present form seeks indemnification. However, the "Wherefore” clause demands judgment for both indemnification and/or contribution. Third-party plaintiffs’ request for permission to replead their first, second, fourth and fifth causes of action so as to expressly assert a claim for contribution, in addition to indemnification, is granted.
This court in the first-party action concluded that "[defendants’ [Valenti and Strong] promise, acted upon, created an affirmative duty to the plaintiff. The breach of such duty was a proximate cause of the damages sustained by the plaintiff”. It is the position of the third-party plaintiffs that Gannett’s promise, similarly acted upon, created an affirmative duty to them and that the breach of such duty was a proximate cause of the damages sustained by them. This court agrees.
Initially, it would appear that under the just-decided United States Supreme Court case of Cohen v Cowles Media Co. (501 US —, 115 L Ed 2d 586), Gannett’s liability to defendants for failure to comply with its promise to Valenti and Anderson that the latter would not be recognizable in the photograph is not barred by the First Amendment. In Cohen (supra), under circumstances far more extreme than those here, the United States Supreme Court found that liability for the promise made by the newspaper reporters to Cohen not to reveal his identity was not foreclosed by the First Amendment, and that such promises were subject to laws of general applicability. The Supreme Court held that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news” (supra, 501 US, at —, 115 L Ed 2d, at 596-597). The court, quoting from Associated Press v Labor Bd. (301 US 103, 132-133), stated "It is therefore beyond *356 dispute that '[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others’ ”. (Supra, 501 US, at —, 115 L Ed 2d, at 597.) It was the parties themselves, the court pointed out, who determined the scope of their legal obligations and, therefore, any restrictions on publication were "self-imposed”.
In view of the Supreme Court’s decision in Cohen (supra), any extended discussion with respect to Gannett’s obligation to honor a promise solemnly made, and its liability for dishonoring that promise, would appear to be unnecessary. However, that does not end the matter because, as the Court of Appeals recently reemphasized in Immuno AG. v Moor-Jankowski (77 NY2d 235), there is also a strong State interest, arising out of our recognition that the Supreme Court under the Federal Constitution fixes only minimum applicable standards of free speech.
As Judge Kaye said for the Court of Appeals in Immuno (supra, at 249): "[W]hether by the application of 'interpretive’ (e.g., text, history) or 'noninterpretive’ (e.g., tradition, policy) * * * factors, the 'protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by’ the Federal Constitution”.
But even under a broader State law analysis, there is no reasonable policy basis to invoke the free speech protection of our State Constitution (art I, § 8) in the circumstances of this case. There is no strong public interest in knowing the identity of someone who is HIV positive or suffering from AIDS. There is no free speech interest which the State must recognize in revealing the identity of such a person. Indeed, the contrary is true. In this public health area, State interests are strongly implicated in not disclosing identity.
New York’s public policy requires strict confidentiality with respect to persons who are HIV positive or who suffer from AIDS. Section 1 of Laws of 1988 (ch 584, eff Feb. 1, 1989) sets forth that policy in clear and unmistakable terms (see also, Public Health Law §§ 2780, 2781, 2782, 2785, 2786).
This strong public policy was recently reinforced by the Court of Appeals in Matter of New York State Socy. of Surgeons v Axelrod (77 NY2d 677, 686), where the court agreed that "most people affected have strong reasons to avoid disclosing that they have AIDS or HIV infection and confidentiality is critical to them” (emphasis added).
*357 In this very important respect, the case at bar is distinguishable from Virelli v Goodson-Todman Enters. (142 AD2d 479). Additionally, a close analysis of that case makes one question whether the court should have merged the newspaper story about drug abuse, which unquestionably "pertain[ed] to matters of legitimate public concern” (supra, 487), with the identity of the people in the story, which did not. There was no showing that the story could not have been fully and freely treated without the necessity of so superficially concealing the identity of the plaintiffs, who had been promised confidentiality, that they were "readily identified”, and thereby humiliated and exposed to contempt and ridicule. The court did not touch on the broken promise of the defendant to permit the plaintiff to review the article prior to publication. Surely an inquiry into whether such a promise was made, and if so whether it was broken, entered into a consideration of whether the publisher acted in a "grossly irresponsible manner” (Chapadeau v Utica Observer-Dispatch, 38 NY2d 196, 199). It may well be, however, that the court’s failure to do so resulted from the plaintiff’s own failure to plead, as here, a cause of action for breach of contract.
Were that the case, "[r]eliance on the defamation cases
* * * would appear to be misplaced * * * [No] contractual duty to maintain a confidence [is] involved” (Doe v Roe, 93 Misc 2d 201, 211).
In any event, this court is not bound by Virelli v Goodson-Todman Enters, (supra), a Third Department case, because of the conflict created by the decision in the First Department of Doe v American Broadcasting Cos. (152 AD2d 482), where the court in July 1989, six months after the decision in Virelli, affirmed the denial of a motion for summary judgment in actions for breach of contract and negligence. There the plaintiffs, including two rape victims, agreed to participate in a television broadcast upon the promise that neither their faces nor their voices would be recognizable. The failure to keep this promise, the court held, was a cognizable claim. In the absence of a Fourth Department ruling on the point, preference is given to the view of the First Department.
Adding weight to this court’s choice of the First Department’s position is the cautionary language of the Minnesota Supreme Court, which stressed that even First Amendment considerations must be dealt with on a case-by-case basis. "We * * * are not inclined to decide more than we have to decide. *358 There may be instances where a confidential source would be entitled to a remedy such sis promissory estoppel, when the state’s interest in enforcing the promise to the source outweighs First Amendment considerations, but this is not such a case” (Cohen v Cowles Media Co., 457 NW2d 199, 205 [Minn]). In my view this case is just such a case.
Not discussed in Virelli (supra), but determined by the Supreme Court in Cohen v Cowles Media Co. (501 US —, 115 L Ed 2d 586, supra), is that an unkept promise to a news source makes the press’ conduct unlawful. Such was the case here. Had Anderson or the third-party plaintiffs known the promise to them would be broken, permission for the photograph would not have been granted. The absence of permission under such circumstances makes Gannett’s conduct unlawful, in the same way as a TV photographer entering someone’s home without permission (see, Anderson v WROC-TV, 109 Misc 2d 2d 904). Neither the Federal nor State Constitutions condone an unlawful trespass.
"[N]ews people do not stand in any favored position with respect to newsgathering activity * * * [They] have no special First Amendment immunity or special privilege to invade the rights and liberties of others (see Branzburg v Hayes, 408 US 665; Pell v Procunier, 417 US 817; Houchins v KQED, 438 US 1; Zemel v Rusk, 381 US 1; Lewis, A Preferred Position for Journalism?, 7 Hofstra L Rev 595; Note, The Rights of the Public and the Press to Gather Information, 87 Harv L Rev 1505; First Amendment as Immunizing Newsman from Liability for Tortious Conduct while Gathering News, Ann. 28 ALR Fed 904).
"As observed by the Second Circuit in Galella v Onassis (487 F2d 986, 995-996): 'Crimes and torts committed in news gathering are not protected * * * There is no threat to a free press in requiring its agents to act within the law.’ (See, also, Le Mistral, Inc. v Columbia Broadcasting System, 61 AD2d 491, opp dsmd 46 NY2d 940.)” (Anderson v WROC-TV, 109 Misc 2d, supra, at 907-908; see also, Dietemann v Time, Inc., 449 F2d 245.)
Compelling the press to respect a promise made and relied upon, and to be responsible for that commitment, does no more than compel the press to act as any other responsible citizen with respect to laws of general application.
The Federal and State Constitutions insulate the press from government action or coercion, not from agreements voluntar *359 ily entered into. When these agreements have been violated or disregarded, the constitutional protection is no longer a defense. Then State laws of general application come into play, rather than the defamation standard of "gross irresponsibility”. The press may freely choose, without government interference, the agreements it makes with others. Although such agreements may involve the content of a news article, they do so only to the extent the press freely and voluntarily agrees and in consideration of the value it receives in return. Here the three dimensions of contract law, offer, acceptance and consideration, were all met.
Nevertheless, Gannett seeks to avoid liability based upon the First Amendment cases expressing concern about the "chilling effect of self-censorship”. Third-party plaintiffs argue, with some justification, that when the press induces others to cooperate in obtaining a news story, there can and should be "self-censorship”. Indeed, Gannett voluntarily undertook to self-censor itself by agreeing that Anderson would not be recognizable. It would be illogical and legally incongruous to hold that Valenti and Strong are responsible for the broken promise made to the plaintiff but that Gannett, the promisor, is not. The duty that springs from the relationship created by this promise was recognized long before the United States Supreme Court’s decision in Cohen v Cowles Media Co. (supra; see, Snepp v United States, 444 US 507; Huskey v National Broadcasting Co., 632 F Supp 1282 [ND Ill 1986] [defendant’s motion denied to dismiss breach of contract action brought by a prison inmate who claimed NBC violated its agreement with the prison that forbade photographing inmates without their consent]).
Requiring the press to honor promises of confidentiality does not place it in an untenable position. The "Shield Law” gives it an absolute protection for refusing to disclose a confidential source (Civil Rights Law § 79-h), and the protection applies to employers as well as to reporters (see, Matter of Beach v Shanley, 62 NY2d 241).
Significantly, even Gannett recognizes that it has no special sanction to make a promise to a news source and then fail to keep it. The Democrat & Chronicle, the very newspaper in which the plaintiff’s photograph appeared, in an editorial entitled "A Promise is a Promise” on June 27, 1991, commenting upon the Cohen v Cowles Media Co. case, with commendable candor admitted, "[w]hen we make a promise of confidentiality we mean it * * * Once the promise was made [to Cohen *360 by the reporters] * * * they should have kept it. To do otherwise would be to say, 'The First Amendment gives us the right to lie’ * * * Talk about a blow to the First Amendment: If people didn’t trust us, they wouldn’t tell us anything. Then we couldn’t print the truth, and you couldn’t read it.”
Thus, even Gannett agrees that "[a] policy of freedom without responsibility would inure to the detriment not only to society in general but also to the disseminators of news information themselves (see Herbert v Lando, 441 US 153)” (Greenberg v CBS Inc., 69 AD2d 693, 700).
The fact that the plaintiff was not recognizable by the reporter and photographer, or even by Valenti, does not make the promise unenforceable. Plaintiff’s family members and friends found that the plaintiff was indeed recognizable from the photograph, and it was so found at trial. The issue is not whether the plaintiff was recognizable to Gannett’s employees. Anderson’s identity had already been disclosed to them. Obviously, Anderson did not care if they knew. He did not want his family and friends to know.
The argument that the third-party plaintiffs "could have required a much more particular agreement as to the parameters of the photo” is essentially the same argument that was presented to the United States Supreme Court in Cohen v Cowles Media Co. (supra) and rejected. It will not do for Gannett to argue that Anderson or Valenti "could have minimized this vagueness and subjectivity by insisting on prepublication review of the photo”. The burden of carrying out its promise of anonymity is that of Gannett and may not be so facilely shifted.
In the first action, it was determined that Strong and Valenti had breached their independent duty to maintain the confidentiality of plaintiff’s identity, and that such breach was a proximate cause of first-party plaintiff’s damages. There also arose a violation by Valenti of hospital policy in failing to secure public relations approval for the photo, as well as the question of his negligence in failing to ask for a prepublication review of the photograph. Accordingly, the absence of negligence, which is essential for a common-law indemnification recovery by the third-party plaintiffs, is absent. Any recovery *361 against Gannett could only be by way of contribution. Necessarily, the extent of such contribution is a question of fact.
For the foregoing reasons, the motions of the third-party defendant and the third-party plaintiffs for summary judgment are denied.