500 F.2d 409
 DEMSEY & ASSOCIATES, INC., and Interestate Steel Company, Plaintiffs,
v.
S.S. SEA STAR, her engines, boilers, etc., et al.,
Defendants-Appellants.
PITTSTON STEVEDORING CORP., Defendant-Appellee,
v.
The JORDAN INTERNATIONAL CO., Defendant-Impleaded-Appellee.
 Nos. 968, 969, Dockets 73-2847, 74-1017.
 United States Court of Appeals, Second Circuit.
 Argued May 17, 1974.
Decided June 21, 1974.
 
 Edwin K. Reid, New York City (Charles E. Duross and Zock, Petrie, Sheneman & Reid, New York City, on the brief), for defendants-appellants and cross-claimants Atlantic Marine Enterprises, Inc. and S.S. Sea Star.
 Renato C. Giallorenzi, New York City, for defendant-appellant World Bulk Shipping Ltd.
 Paul Falick, New York City (John L. Quinlan and Bigham Englar Jones & Houston, New York City, on the brief), for defendant-appellee.
 Morris Rosoff, New York City (Rosoff & Rosoff, New York City, on the brief), for defendant-impleaded-appellee.
 Before MEDINA, HAYS and OAKES, Circuit Judges.
 MEDINA, Circuit Judge:
 
 
 1
 Defendants and cross-claimants Atlantic Marine Enterprises, Inc. and S.S. Sea Star appeal from an order denying their application as against defendants World Bulk Shipping Ltd., Pittston Stevedoring Corp. and the impleaded defendant The Jordan International Co. for legal fees and disbursements; and defendant World Bulk Shipping Ltd. appeals from an order denying its application as against defendant Pittston Stevedoring Corp. and impleaded defendant The Jordan International Co. for legal fees and disbursements.
 
 
 2
 We shall assume familiarity with Judge Bonsal's opinion of June 3, 1970, 321 F.Supp. 663 (S.D.N.Y.1970) and with our opinion on the appeal from Judge Bonsal's decision, 461 F.2d 1009 (2d Cir. 1972).
 
 
 3
 Cargo damage cases have a way of becoming complicated and difficult. But this one surpasses by far in its complexity and its maze of conflicting cross-claims and miscellaneous issues of law and fact anything in our experience. The shipowner, the stevedoring company, as well as both the time and voyage charterers, are involved in this litigation. It would seem that the parties did everything in their power to make mistakes and confuse the issues. The cargo owners delivered several hundreds of steel coils that were rusted, some of them deeply pitted. In the hurry to provide clean-on-board bills of lading for banking purposes, Jordan, the voyage charterer, requested World Bulk, the time charterer of the Sea Star, to issue clean-on-board bills of lading despite the fact that the vessel had not yet been loaded, and the rust was plainly visible on the coils as they were stacked on the pier. Each bill of lading was signed by World Bulk's agent, Representaciones, 'for the Master' although neither World Bulk nor Representaciones had the authority to sign bills of lading on behalf of the Master. The Sea Star was plainly unseaworthy as the hatch covers in the 'tween decks were old and dry and could not hold the heavy steel coils. The stowage in the hold and in the 'tween deck was in many ways defective and the coils rolled about damaging one another and some fell through the hatch covers to the hold below causing further damage. There was extensive further damage to the coils because of negligent discharge.
 
 
 4
 The cargo owners sued the Sea Star in rem, Atlantic (owner of the Sea Star), World Bulk and Pittston in the Southern District of New York in January of 1964. Jordan was impleaded by Atlantic and World Bulk. Jordan in turn filed cross-claims against World Bulk, Atlantic and Pittston. Atlantic and World Bulk asserted cross-claims against each other and against Pittston. It was a real Donnybrook and no quarter was given. The trial before Judge Bonsal did not begin until October of 1969. In the interim, some eight different District Court judges ruled on various motions in the case.
 
 
 5
 It would be tedious to attempt to enumerate the number of digressions that have occurred in this case since 1964. There was an arbitration claim by Jordan arising out of one of the clauses in the voyage charter. There was a dispute over who was 'the carrier' under the Carriage of Goods by Sea Act. There was a lengthy and confusing dispute over who planned and who actually supervised the loading and stowage of the cargo.
 
 
 6
 As a result of several months of study, we finally reduced the conflicting claims to some semblance of order. While it is asserted that World Bulk was blameless, we found World Bulk was 'the carrier' and responsible for all the damage because the plaintiffs had established a prima facie case and that this prima facie case had not been rebutted. This ruling applied to both the Sea Star and World Bulk. It was clear to us that part of the damage to the cargo was caused by the unseaworthiness of the Sea Star and a greater part due to the faulty loading and stowage.
 
 
 7
 In other words, the cargo owners had been held off for some nine years while the energies of the various parties had been devoted chiefly to establishing that someone else was liable. Judge Bonsal in his order below denying counsel fees found that 'While for over nine years the lawyers for the defendants have acted in concert to defeat plaintiffs' legitimate claims, each has sought to avoid any liability.' We suspect furthermore that most of the legal fees in this case were expended either in prosecuting or defending against claims of other defendants.
 
 
 8
 After our decision, there remained a number of thorny questions of fact still to be resolved on the remand that we ordered. A settlement was finally effected but not without further prodding. We had urged that the relatively small amount of damages involved be stipulated, but the parties could not agree on the amount or the allocation of the damages. The court below on the petition of the plaintiffs appointed a Special Master whose report was subsequently approved without objection.
 
 
 9
 There is clearly no statute requiring or authorizing the payment of legal fees and disbursements in this type of proceeding in admiralty. It is also clear that in the absence of statute or contractual authorization, attorney's fees are not generally recoverable either as part of costs or of damages. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).
 
 
 10
 In indemnity cases, the courts have regularly required the indemnitor to reimburse the indemnitee for the costs of defending the original suit, and the appellants argue that this case is just one of these common garden variety of indemnity cases. Thus, we are told that if a longshoreman is injured and sues the shipowner for unseaworthiness and the shipowner asserts a third party claim against the stevedore who created the unseaworthy condition, the shipowner who loses after defending the action may generally recover the costs of defending the lawsuit because the stevedore breached his express or implied guarantee of workmanlike service and thus in effect agreed to indemnify the shipowner. We are also told that the same principle applies to cargo damage cases. These references lead up to an extensive discussion of the theoretical basis for such recoveries. Are they part of the damages for breach of the contract of indemnity? Are such recoveries discretionary? Paliaga v. Luckenbach Steamship Company, 301 F.2d 403 (2d Cir. 1962); Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964). Does Judge Cannella's ruling in Consolidated Cork Corporation v. Jugoslavenska Linijska Plovidba, International Terminal Operating Co., Inc., and the M/V Slovenija, 1971 A.M.C. 1193 (S.D.N.Y.1970), apply to the effect that to justify the exercise of discretion in favor of attorney's fees the court must find some "overriding considerations of justice' which compel awarding attorney's fees'?
 
 
 11
 These considerations must be weighed, but all are subject to the hornbook doctrine that equitable principles are part and parcel of the law administered in admiralty. This case presents unusual if not unprecedented complexities. In light of the particular history of this case, we think it would be unconscionable and a gross miscarriage of justice to direct the payment of any sums by any of the parties to reimburse any of the other parties for payments to their lawyers for legal fees or disbursements.
 
 
 12
 Affirmed.
 
 OAKES, Circuit Judge (concurring):
 
 13
 I concur in the result.