DOW CHEMICAL PACIFIC
LTD., Plaintiff,

v.

RASCATOR MARITIME S.A.; Intra-Span, Inc.; Mahmud Ahmed, a/k/a Mahmud Sipra; Miles A. Galin, M.D.; the Sanko Steamship Co., Ltd.; Sanko Kisen (U.S.A.) Corp.; M/V Ogden Fraser, her engines, boilers, etc.; Ogden Fraser Transport, Inc., Defendants.

MANUEL INTERNATIONAL INC., and
Manuel International D.I.S.C.,
Inc., Plaintiffs,

v.

RASCATOR MARITIME S.A.; Intra-Span, Inc.; Mahmud Ahmed, a/k/a Mahmud Sipra; Miles A. Galin, M.D.; the Sanko Steamship Co., Ltd.; M/V Ogden Fraser, her engines, boilers, etc.; Ogden Fraser Transport, Inc., Defendants.

Nos. 79 Civ. 3131 (KTD), 80 Civ.
0359 (KTD)

United States District Court,
S.D. New York.

July 17, 1986.

Zock, Petrie & Curtin, New York City (Philip J. Curtin and Mary T. Reilly, of

counsel), for defendant Sanko Steamship Co., Ltd.

W. Shelby Coates, Jr., New York City, for defendant Rascator Maritime S.A.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y. (Robert E. Goldman and John F. Kaley, of counsel), for defendant Miles A. Galin, M.D.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant, The Sanko Steamship Co., Ltd. ("Sanko"), moves pursuant to Fed.R. Civ.P. 56 for an order granting it summary judgment for attorneys' fees and costs against defendants, Rascator Maritime, S.A. ("Rascator"), Intra-Span, Incorporated ("Intra-Span"), Miles A. Galin ("Galin"), and Mahmud Ahmed a/k/a Mahmud Sipra ("Sipra"), jointly and severally. Essentially, the issue presented is whether Sanko is entitled to an award of legal fees as part of its indemnity judgment against the aforementioned defendants.

Galin and Rascator oppose Sanko's motion arguing (1) that the issue raised should be referred to arbitration, and (2) that there is a dispute as to material facts, including what costs should be calculated as part of the attorneys' fees. Sanko contends that any right to arbitration has been waived and that there are no material facts in dispute because they have been conclusively determined in prior proceedings before me. *See,* 594 F.Supp. 1490 (S.D.N.Y. 1984) and 609 F.Supp. 451 (S.D.N.Y.1984).

## BACKGROUND

The pertinent facts are set forth in greater detail in my earlier opinions and therefore will only be summarized briefly herein. Familiarity with these opinions and the opinion of the Second Circuit Court of Appeals, 782 F.2d 329 (2d Cir.1986), is presumed.

In the original action, the plaintiffs were Dow Chemical Pacific Ltd. ("Dow") and Manuel International, Inc. and Manuel International D.I.S.C., Inc. (together "Manuel"). Dow sought to ship approximately 2,440,000 pounds of polyethylene resin aboard the Ogden Fraser, a general cargo vessel, from Montreal, Canada, to Bombay, India. Manuel sought to ship approximately 2,500 tons of steel aboard the Ogden Fraser from New Orleans, Louisiana, to Bombay, India.

The Ogden Fraser is owned by Ogden Fraser Transport, Inc. ("Ogden"). The vessel had been time chartered to Sanko through its agent, Sanko Kisen (U.S.A.) Corporation ("Sanko Kisen"), in 1974. The time charter agreement was on the New York Produce Exchange form of time charter party and was to last for a period of six years.

In November 1978, the Ogden Fraser was sub-time chartered by Sanko to Rascator. This charter agreement was also on the New York Produce Exchange form of time charter party. Rascator has been found to be the alter ego of Galin. Intra-Span was a corporation that conducted business on behalf of Rascator in the United States, and Sipra was the president and sole stockholder of Intra-Span.

Clause 8 of the time charter agreement between Ogden and Sanko provided that Sanko, as time charterer, was to be responsible for directing the itinerary of the Ogden Fraser and for performing cargo operations.[1] Clause 16 provided that Sanko could sub-charter the vessel but was to remain responsible to Ogden for the fulfill-

---

1. Clause 8 of the New York Produce Exchange form of time charter party reads as follows:
   8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, and trim and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts. without prejudice to this Charter Party. [sic]

ment of the terms of the charter.[2] The sub-time charter agreement between Sanko and Rascator also included a Clause 8 provision, which made Rascator responsible for directing the itinerary and performing the cargo operations of the Ogden Fraser, and a Clause 16 provision, making Rascator responsible to Sanko for the fulfillment of the terms of the charter.

In December, 1978, the Dow cargo was loaded onto the Ogden Fraser in Montreal. The vessel then proceeded to New Orleans, where 1,487 tons of Manuel's steel cargo was loaded. On February 1, 1979, Gulf Stream Navigation, a corporation owned by Sipra, sent instructions to the Ogden Fraser ordering the vessel not to proceed to Bombay, but to sail to Cadiz, Spain, a port to which the vessel was not originally scheduled to call. The vessel was further instructed to discharge the steel and resin cargoes in Cadiz.

Dow and Manuel brought action to recover transshipment expenses incurred because of the vessel's deviation to Cadiz and its discharge of cargo there. I held that under the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C. §§ 1301–1314, Rascator was a carrier of the plaintiffs' cargoes, and the defendants were liable to the plaintiffs for the unreasonable deviation of the vessel and the transshipment expenses. The Ogden Fraser was also liable *in rem* to the plaintiffs.

Due to the Clause 8 and Clause 16 provisions, Ogden, as the vessel's owner, was entitled to be indemnified by its charterer Sanko for damages caused by the Ogden Fraser's deviation. Sanko was also entitled to indemnification by its charterer, Rascator. Having "pierced the corporate veil" of Rascator, I found Galin and Sipra personally liable for Rascator's actions. Intra-Span, as the agent of Rascator direct-

ly responsible for the cargo was also found liable. These judgments concerning the parties' rights to indemnification were affirmed on appeal.

I awarded attorneys' fees to Ogden in the amount of $84,411.98 against Rascator, Intra-Span, Galin, and Sipra, citing bad faith as the reason. Sanko was subsequently added as a party from whom Ogden could recover its attorneys' fees. Sanko itself was awarded attorneys' fees of $84,485.54 against Rascator, Galin, Intra-Span, and Sipra and was given an award entitling it to be indemnified for any amounts it might pay Ogden. On February 8, 1985, Sanko paid $84,411.98 to Ogden in order to satisfy the judgment against it for attorneys' fees. Rascator, Galin, Intra-Span, and Sipra appealed and the Second Circuit Court of Appeals affirmed my judgment on the liability and indemnity issues but remanded on the issue of attorneys' fees.

## DISCUSSION

■ I should note at the outset that I find Rascator and Galin's request for arbitration to be without merit. Concededly, the time charter agreement between Rascator and Sanko contained an arbitration provision, Clause 17. Rascator and Galin, however, participated in all aspects of the previous litigation of this action. They filed answers and cross-claims, participated fully in all steps to the trial, and appealed the decision. "Whereas there is a strong federal policy favoring arbitration ..., the right to arbitrate may be waived." *Demsey & Associates v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir.1972). Having already participated so extensively in the litigation of this case, Rascator and Galin have waived any right to arbitration. The motion before me seeks a summary judgment

2. Clause 16 of the New York Produce Exchange form of time charter party reads as follows:

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

awarding attorneys' fees on an indemnity principle. For the reasons set forth below, I grant this motion.

In order to succeed on a motion for summary judgment the moving party must show there is no "genuine issue as to any material fact ... [when] viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Because the action from which this motion arises has already been adjudicated, there is no question of material fact that is at issue.[3] Instead, the question presented is simply whether attorneys' fees are to be granted to the movant on indemnity principles and, if so, what the amount of those fees should be.

■ The Second Circuit has consistently included attorneys' fees in the amount which a charterer or subcharterer owes to the owner or charterer when an indemnification judgment has been entered. In *Nichimen Company v. M.V. Farland*, 462 F.2d 319 (2d Cir.1972), the shipowner, A/S Vigra, sought indemnity from the charterer, Seaboard Shipping Co. Ltd., for liability to the consignee, Nichimen Company, Inc., for cargo damages. The court ruled:

If [the charterer] breached its duty to [the shipowner] under clause 8 of the charter, it is bound to make good the expectable consequences of its breach, of which the incurring of attorneys' fees in defending against a claim by [the consignee] was surely one.

*Id.* at 333. *Accord David Crystal, Inc. v. Cunard Steam-ship Co.*, 339 F.2d 295, 300 (2d Cir.1964), *cert. denied*, 380 U.S. 976, 85 S.Ct. 1340, 14 L.Ed.2d 271 (1965); *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 587 F.Supp. 172, 179 (S.D.N.Y.1984). Clearly the present situation falls within this precedent.

Galin attempts to refute the importance of the above principle stating, "While these cases generally support an indemnity award of attorneys' fees, their application is not absolute, but rather is grounded in equitable principles, and the equities to be found in a given case." Defendant Galin's Memorandum Of Law In Opposition To Sanko's Motion For Summary Judgment On The Issue Of Attorneys' Fees ("Galin's Memo"), 6. This concept of weighing the equities was stressed by the Second Circuit in *Demsey & Associates, Inc. v. S.S. Sea Star*, 500 F.2d 409 (2d Cir.1974). In *Demsey* the court explained why it was not following the precedent of including attorneys' fees in an indemnity award. The court cited the "unusual if not unprecedented complexities" of the case and the confusion caused by the defendants' separate efforts to disclaim liability. "In other words, the cargo owners had been held off for some nine years while the energies of the various parties had been devoted chiefly to establishing that someone else was liable." *Demsey*, 500 F.2d at 410-11. At the same time, the court reaffirmed the traditional policy by stating, "In indemnity cases, the courts have regularly required the indemnitor to reimburse the indemnitee for the costs of defending the original suit...." *Demsey*, 500 F.2d at 411. Thus, the *Demsey* court distinguished its ruling from the precedent by stressing the unusualness of the facts.

Neither Sanko nor Ogden acted in any way to disrupt or delay the trial nor did their later actions evidence an attempt to avoid the judgment. Their actions could not be said to have unreasonably added to the length or confusion of the dispute. Therefore, an exception to the traditional policy is inappropriate in this case, and I order that all fees Sanko has paid to Ogden and which Sanko has accrued during the litigation are to be paid by Rascator, Galin, Intra-Span, and Sipra, jointly and severally.

■ The issue remains as to what is the appropriate amount of attorneys' fees and costs due Sanko. After reviewing the fee

---

**3.** Defendant Galin's assertion that summary judgment should not be rendered because of inconsistency in the dating of certain attorneys' fee records is not convincing. John F. Kaley, Affidavit, ¶ 9 and Exhibit B. The record in question was found in the file in a position that indicates a clerical error in the dating occurred and not an attempt to present false records.

application affidavits, I have decided to adjust the amount of the award for costs in accordance with the provisions of 28 U.S.C. § 1920. Ogden's request for costs listed as miscellaneous, postage, telephone, telex, and couriers are normal out-of-pocket disbursements and as such are generally not included in the taxable costs. *See Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 439 (E.D.Mo.1984). Therefore, $1,041.50 should be subtracted from the initial award, and Rascator, Galin, Sipra, and Intra-Span are ordered to reimburse Sanko in the amount of $83,370.48 paid in fees and costs to Ogden. Similarly, Sanko's request for costs listed as taxis, carfare, meals, miscellaneous, word processing, messengers, telexes, and cables are all normal out-of-pocket expenses and also should not be included in the taxable costs. Therefore, $4,056.31 should be subtracted from the initial award, and Rascator, Galin, Sipra, and Intra-Span are ordered to pay Sanko fees and costs of $80,429.23.

■■■ The only question remaining concerns prejudgment interest. Galin relies on *Larsen v. A.C. Carpenter, Inc.,* 620 F.Supp. 1084 (E.D.N.Y.1985), to support his assertion that prejudgment interest should not be awarded because he did not conduct this litigation in bad faith. Galin's Memo, 7–8. *Larsen,* however, is inapposite. *Larsen* provides that the prejudgment interest is discretionary but is usually allowed unless there are exceptional circumstances that bar it. *Larsen,* 620 F.Supp. at 1125. The court in *Larsen* then quotes the following language from *United States v. Peavey Barge Line,* 748 F.2d 395, 402 (7th Cir. 1984):

> [Exceptional circumstances exist] where the party requesting the prejudgment interest has unreasonably delayed prosecuting its claim, has made a bad faith estimate of its damages which precludes settlement or has not sustained any actual damage.

*Id.* Thus, it is not the bad faith of the party from whom the interest is sought that is important, but rather, the bad faith of the party seeking the interest. No exceptional circumstances exist in the instant case to warrant denial of prejudgment interest. Accordingly, Sanko is awarded prejudgment interest on its claims against Galin, Rascator, Sipra, and Intra-Span. The interest shall be calculated at a rate of 9%. *See* N.Y.Civ.Prac.Law § 5004; *Strobl v. New York Mercantile Exchange,* 590 F.Supp. 875, 883 (S.D.N.Y.1984), *aff'd,* 768 F.2d 22 (2d Cir.1985); *Larsen,* 620 F.Supp. at 1126.

In sum, Sanko's motion for summary judgment on the issue of attorneys' fees and costs is granted. Sanko is entitled to $83,370.48 plus prejudgment interest at a rate of 9% from Galin, Rascator, Sipra, and Intra-Span, jointly and severally, as indemnification for the payments it has already made to Ogden. In addition, Sanko is to be indemnified by Galin, Rascator, Sipra, and Intra-Span, jointly and severally in the amount of $80,429.23 plus prejudgment interest at a rate of 9% for attorneys' fees and costs accrued in the litigation of these actions.

SO ORDERED.