**TOUTON, S.A.**

v.

**M.V. RIZCUN TRADER, et al.**

No. CIV. A. 97–2058.

United States District Court,
E.D. Pennsylvania.

April 24, 1998.

seeks to recover from Latif Maritime, Ltd. ("Latif"), owner of the M.V. Rizcun Trader, and from Defendant Winston Shipping Corporation ("Winston"), the charterer of that ship, damages incurred in connection with a shipment of cocoa from the Ivory Coast to Philadelphia.

Winston has moved to stay this action pending arbitration, pursuant to a provision contained in a Liner Booking Note between Touton and Winston. For the reasons set forth below, the Court will grant Winston's motion, and order this proceeding stayed.

## II. *Factual Background*

In February, 1997, a cargo of bagged cocoa was loaded aboard the Rizcun Trader in Abidjan in the Ivory Coast. While the ship was being loaded, a number of stowaways boarded and hid in her hold. After the loading was completed, the cargo was fumigated to kill insects. Tragically, several of the stowaways were killed by the fumigation process. Both the living stowaways and the bodies were removed from the ship before she left port. The Rizcun Trader then sailed from the Ivory Coast to Philadelphia with its cargo.

When the Rizcun Trader reached Philadelphia, the United States Food and Drug Administration ordered that the cargo be detained pending inspection and clearance, due to its having been in contact with dead bodies. Several weeks later, after the segregation and destruction of 199 bags of cocoa which had been stored in the holds where the stowaways were found, the remaining cargo was cleared for release.

Phibro Commodities, which had contracted to purchase the cargo from Touton, filed this action on March 21, 1997, and moved for expedited discovery to preserve certain evidence which was likely to be unavailable later, including the depositions of members of the Rizcun Trader crew. Phibro named Touton as a defendant, as well as Latif and Winston. (Later, Touton and Phibro agreed that Touton would retain title to the cargo,

Edward V. Cattell, Jr., Hollstein, Keating, Cattell, Johnson & Goldstein, P.C., Philadelphia, PA, for Phibro Commodities.

Alfred J. Kuffler, Palmer, Biezup & Henderson, Philadelphia, PA, Michael P. Zipfel, Rawle & Henderson, Philadelphia, PA, for Defendants.

## OPINION AND ORDER

HART, United States Magistrate Judge.

### I. *Introduction*

In this action, plaintiff Touton, S.A. ("Touton"), a French corporation dealing in cocoa,

and then realign itself as the plaintiff in this action).

On March 24, 1997, Judge Marjorie O. Rendell heard argument on Phibro's motion for expedited discovery, which was joined by Touton. Latif opposed the motion and moved to dismiss the action on the basis that any claims against it could be heard only in London, and only under English law.

By order dated March 26, 1997, Judge Rendell granted the expedited discovery, and refused to dismiss the action, but only as it related to the ordered discovery. She offered no opinion on any of the forum issues raised by Latif's motion, limiting her ruling instead to the sole issue of whether limited discovery was necessary to perpetuate testimony. Specifically, she permitted the deposition of six members of the ship's crew and also permitted the inspection of certain documents, as well as the vessel. During oral argument on the present stay motion, counsel confirmed that this is the only discovery that has been taken to date.

Touton, by now the plaintiff in this case, filed an amended complaint on April 10, 1997, which was served upon Latif and Winston. Latif filed an Answer and a Cross claim against Winston on April 29, 1997, in which it again raised, as its Twentieth Separate Defense, that the action should be "stayed and/or dismissed pursuant to the applicable forum selection and/or arbitration clauses" in force between the parties. Winston did not answer Touton's complaint until October 29, 1997. In the intervening months, Touton proceeded with the depositions allowed by Judge Rendell, and informally exchanged documents with Latif.

In its Answer, Winston stated in its first numbered paragraph that "this lawsuit should be dismissed or stayed pursuant to the applicable forum selection clause(s) and arbitration clauses contained in the governing contract(s)." On December 11, 1997, Winston filed the present Motion to Stay Proceedings Pending Arbitration. Touton opposes the stay, arguing (1) that this dispute is not subject to London arbitration; and (2) that, even if it is, Winston has waived

its right to arbitration. Latif, which moved for dismissal before Judge Rendell, has now withdrawn that motion and has joined Touton in opposing Winston's motion.

### III. *Discussion*

#### A. *The Parties Contracted for London Arbitration*

##### 1. *The Parties Agreed to Arbitrate This Dispute*

Under the Federal Arbitration Act, a written arbitration provision in a maritime transaction such as this is valid and enforceable, except upon such grounds as would invalidate any contract. 9 U.S.C. § 2. If an action is brought in a United States court regarding an issue covered by a written arbitration agreement, the court must stay the trial of the action upon application of one of the parties, until arbitration has taken place, except in the case of default. 9 U.S.C. § 3. Initially, therefore, the Court must decide whether the parties before it have agreed to arbitrate their dispute. *See, Century Steel Erectors v. Aetna Casualty & Surety,* 757 F.Supp. 659 (W.D.Pa.1990).

Despite never having raised the issue in its Answer to Winston's Stay Motion, or in any of its memoranda filed with this Court in opposition to that Motion, Touton took the position at oral argument that it never agreed to arbitrate this dispute. Touton invited the Court to compare the language of the marked-up bill of lading that is attached to the Liner Booking Note with the actual bills of lading for the cargo, issued by Winston after it completed loading the Rizcun Trader at Abidjan.

Touton admits, as it must, that the bill of lading attached to the Liner Booking Note provides that disputes between the parties will be settled by London arbitration. Specifically, paragraph 3 of the bill[1] is modified to direct the reader to "Box 13" of the Liner Booking Note itself, which states "Arbitration, General Average London/English law to apply, Hague and Visby rules applicable." However, Touton argues that once the load-

---

1. The original paragraph 3, which is crossed out, requires disputes to be settled "in the country where the carrier has its principal place of business" and under the law of that country.

ing was completed and the voyage began, the Liner Booking Note no longer governed the relationship between Touton and Winston. Rather, that relationship was governed *solely* by the 22 actual bills of lading tendered by Winston to Touton. Unlike the version of the bill of lading attached to the note, the actual bills contained no modifications of any sort.[2]

Touton conceded that Winston's failure to conform the actual bills of lading to the version attached to the Liner Booking Note may have been mere oversight. It argues, however, that since the bills themselves are negotiable instruments, their language controlled once the Liner Booking Note ceased to have life.

■ Touton's argument fails for a variety of reasons. First, the applicability of the Liner Booking Note to this dispute has already been conceded in Touton's Answer to Winston's Motion to Stay. Paragraph 7 of the Motion to Stay alleges that "According to the Liner Booking Note, in the event that any dispute should arise between the carrier [Winston] and the merchant [Touton], the matters in dispute shall be referred to London Arbitration." (Brackets supplied). Touton admitted the truth of this allegation in its Answer to the Motion. It maintains, nonetheless, that this does not preclude its now arguing that the parties never agreed to arbitrate the present dispute. All that was admitted in its Answer to the Stay Motion, says Touton, is that the Liner Booking Note provides for arbitration. What was not admitted, because it was not alleged, is that the Liner Booking Note governed this particular dispute.

While clever, this argument (if the Court may be excused a rather obvious joke) misses the boat. Winston's stay motion was obviously based on the assumption that the Liner Booking Note controlled the rights of the parties in *this* case and as to *this* dispute. The quoted language from the Liner Booking Note that appears in the Stay Motion, and which was admitted by Touton, says that "*any* dispute" between the parties shall be resolved through London arbitration. (Emphasis added). If Touton intended to challenge arbitrability in its response to Winston's stay motion, it should have done more than simply admit the allegations of paragraph 7. But it did not. In fact, Touton failed to challenge the applicability of the arbitration provision to this dispute either in its answer or in its legal memorandum in opposition to the stay. The Federal Rules of Civil Procedure are not designed to encourage such "pleading by ambush."

Moreover, in the very next paragraph of the Motion, Winston alleges that "The Liner Booking Note further states that English law, as well as the Hague and Visby Rules, will govern *the arbitration*." Motion to Stay at ¶ 8. (Emphasis supplied). In context, "the arbitration" could only mean the very proceeding that Winston wishes to invoke by its stay motion. Yet, the allegations in paragraph 8 are also admitted by Touton.

■ Even had Touton timely challenged the applicability of the Liner Booking Note to this dispute, its challenge (to continue an unfortunate trend) "fails to hold water." While it is true that bills of lading are negotiable instruments (*see, e.g., Evergreen Marine Corporation v. Six Consignments of Frozen Scallops*, 4 F.3d 90 (1st Cir.1993); *Pyropower Corporation v. M/V Alps Maru*, 1993 WL 45978 (E.D.Pa. February 19, 1993)), we are not dealing here with an innocent holder in due course, who could not be expected to know the contents of any preceding document. To the contrary, not only did Touton know that the agreement with Winston provided for London arbitration, it was one of the signatories to the very document so providing.

Further, in language appearing just above the signatures on the Liner Booking Note, the parties acknowledged that, while the Note would eventually be superseded by bills of lading, the terms of those bills would be those "which (in full or extract) are found on the reverse side hereof", i.e., the terms providing for London arbitration.

---

**2.** The bill of lading attached to the Liner Booking Note was the subject of numerous alterations. In addition to modifying paragraph 3, the parties also changed paragraphs 5, 14, 17 and additional clause B.

■ We come, at last, to the final and perhaps most compelling reason why Touton's arbitrability argument (we promise we're finished now) "runs aground". The allegedly negligent act of allowing the stowaways to board the Rizcun Trader occurred while the ship was still in the process of being loaded. All parties agree that the stowaways were killed by the fumigation, and all parties agree that the fumigation took place at the conclusion of cargo loading. Therefore, the stowaways must have boarded either before, or during, the loading. As a result, any actionable conduct in this case— whether by Winston or Latif—occurred *before* the bills of lading superseded the Liner Booking Note.[3] Indeed, the damage was done before the bills of lading even came into existence.

Thus, even if the bills of lading superseded the Liner Booking Note at some point, and even if the absence of an arbitration provision in the bills themselves would shield Touton from having to arbitrate certain disputes, those bills of lading are not controlling here. Accordingly, the Court finds that Winston and Touton did, in fact, agree that the present dispute between them is subject to arbitration.[4]

3. Both Touton and Latif admit that the loading of the Rizcun Trader was done pursuant to the terms of the Liner Booking Note. Paragraph 5 of Touton's Amended Complaint alleges, in part, that "On February 14, Touton completed loading of the bagged cocoa on Defendant M.V. Rizcun Trader at Abidjan, Ivory Coast for carriage to Philadelphia under the terms of a booking note between Touton and defendant Winston." Likewise, in its Motion to Dismiss, Latif made the same allegation, word for word, in paragraph 9. Latif also pleaded that the cocoa was actually fumigated on February 14, meaning that both the boarding of the stowaways and their death occurred as part of the loading process.

4. Before "going down for the third time" (the Court is sorry, but it couldn't resist), counsel for Touton made one final plea, in a letter faxed to the Court on April 14, 1998, while preparation of this opinion was underway. In that letter, Touton argues that even if *it* is subject to mandatory arbitration, Latif is not, since Latif is not party to the liner booking note. The Court is not persuaded.

First, today's Order does not dismiss the case. It only stays it so that Winston and Touton may arbitrate their disputes in London, as they contractually agreed to do. Latif may very well decide to submit voluntarily to that proceeding in

### 2. The London Arbitration Provision is Controlling

Touton next argues that, even if the bills of lading do not supersede the Liner Booking Note, the terms of the bills still cannot be ignored. So again, Touton directs the Court to the jurisdiction provision of the bills, which states:

> Jurisdiction. Any dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein.

Touton argues that, since it is unclear whether this case is to be decided under English law, or under the law of any one of several other countries where the carrier (whether deemed to be Latif or Winston) has its principal place of business, this Court should keep the case and decide all issues under United States law.

As authority for this argument, Touton points to *Brier v. Northstar Marine, Inc.*, 1993 AMC 1194 (D.N.J. April 28, 1992 and July 1, 1992), where the United States Dis-

the interests of economy. But, even if it does not, the case in this Court is still alive as a forum to resolve any disputes between Touton and Latif that may remain after the arbitration.

Second, Touton stands in the shoes of Phibro, *vis a vis* any claims it may have against Latif. This is important, because Latif has already alleged in a pleading filed in this Court (the now withdrawn Motion to Dismiss) that "the only proper forum for Phibro to commence litigation against Latif or the M.V. Rizcun Trader is London, England, pursuant to English law." (Latif Motion to Dismiss at paragraph 21) While the Motion may have been withdrawn, Latif is still bound by the allegations made in its own moving papers. And even though paragraph 21 does not include the word "arbitration," it does claim exclusive jurisdiction in London and the applicability of English law. Furthermore, in paragraph 23, Latif alleges that the Cross claim issues between it and Winston must be decided in London arbitration and that, likewise "disputes between Winston and Touton are also to be arbitrated in London."

In short, at some point in the history of this case, Latif has argued that every issue between every party, including itself, belongs in London. It should, therefore, be happy to join the party.

trict Court for the District of New Jersey kept a case, despite the existence of a London arbitration clause. *Brier* provides no real support for Touton, however. The Court's decision in *Brier,* in which an individual yacht owner sued a salvaging company, turned upon its determination that where both parties were United States citizens, foreign arbitration was precluded by The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208, 1993 AMC at 1201–03, *citing* 9 U.S.C. § 202. Here, no party is a United States citizen or has its principal place of business in the United States. The Convention section cited above simply does not apply.

Moreover, this argument, just like the bill of lading vs. Liner Booking Note argument itself, is disposed of by the fact that the allegedly actionable conduct of defendants took place before the bills of lading came into existence. There is, then, no dispute "under the bills of lading", and no jurisdictional provision in conflict with the Liner Booking Note's Paragraph 13, requiring London arbitration.

Accordingly, the Court finds that Touton and Winston agreed that the present dispute between them is subject to resolution by London arbitration.

## B. *Winston Has Not Waived Its Right to Arbitration*

### 1. *The Standard for Waiver*

■ If an action is brought in a United States court regarding an issue covered by a written arbitration agreement, the court "shall" stay the trial of the action upon application of one of the parties, until arbitration has taken place, "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Where the parties have agreed to arbitration, therefore, the issuance of a stay is mandatory except in the case of default. *Kirschner v. West Company,* 185 F.Supp. 317, 319 (E.D.Pa.1960);

see, *also, Campeau Corp. v. May Department Stores Co.,* 723 F.Supp. 224, 226–7 (S.D.N.Y.1989).

■ "Default" here is conduct in the nature of a waiver. *Morewitz v. West of England Ship Owners Mut. Protection and Indemnity Association,* 62 F.3d 1356, 1365–66 at ftn.·16 (11th Cir.1995), *cert. denied* 516 U.S. 1114, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996); *and see PaineWebber Incorporated v. Faragalli,* 61 F.3d 1063, 1068–9 (3d Cir. 1995); *Gavlik Construction Company v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir. 1975).

■ In the Third Circuit, waiver will normally be found only where the demand for arbitration comes long after a suit is commenced, and when both parties have engaged in extensive discovery. *PaineWebber Incorporated v. Faragalli, supra,* at 1068–9; *Gavlik Construction Company v. H.F. Campbell Co., supra,* at 777, 783. This Court has explained that the waiver of a right to arbitration must be established by clear and convincing proof that (a) the party seeking a stay has acted in a manner inconsistent with arbitration and that (b) these inconsistent acts prejudiced the other party. *J.D. Fegely, Inc. v. Kline Iron & Steel Company, Inc.,* 1989 WL 71549 at *2 (E.D.Pa., June 27, 1989).

### 2. *Delay Alone is Insufficient to Constitute Waiver*

■ Touton argues that Winston waived its right to arbitration under § 3 of the FAA. It points out that Winston did not file an Answer in this case until October 20, 1997, seven months after the original complaint was filed, and over six months after Touton filed its Amended Complaint. Winston's motion to stay was not filed until December 11, 1997. Thus, Winston delayed from six to nine months in seeking a stay. Moreover, Winston did not actually commence an arbitration action until April 9, 1998—after oral argument on this motion.[5]

---

5. Touton and Latif urge the Court to attach special significance to the fact that Winston had not actually initiated London arbitration by the date of oral argument on its Stay Motion, April 8,

1998. Touton even suggested that Winston might be playing possum here, waiting to raise a time bar to Touton's claims when the case finally gets to arbitration in London. Counsel for Win-

It is true that waiver has been found in cases that involve similar, or even shorter delays than the one present here. For example, in *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir.1992), the Court of Appeals for the Third Circuit found that a defendant waived arbitration where it delayed "almost one year." In *J.D. Fegely, Inc. v. Kline Iron & Steel Co., supra*, this Court found a waiver after a delay of about a year from the time the issue of arbitration was first raised. *See, also, Graig Shipping Co. v. Midland Overseas Shipping Corporation*, 259 F.Supp. 929 (S.D.N.Y.1966) (where waiver was found although there was no delay); *and Cereal Mangimi v. M/T Vall Star*, 1978 AMC 852 (E.D.Va., February 7, 1978) (involving a four-month delay).

However, courts have also refused to find waiver in cases involving even *longer* delays than Winston's. Notably, in *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir.1968), the Court of Appeals for the Second Circuit refused to find waiver of a stay pending arbitration after a two-year delay. It stated there that "mere delay in seeking a stay of the proceedings without some resultant prejudice to a party cannot carry the day." 389 F.2d at 696, *citing, Kulukundis Shipping Co., S.A. v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir.1942). *See, also, Tenneco Resins, Inc. v. Davy International AG*, 770 F.2d 416 (5th Cir.1985) (involving a delay of eight months); *and Nissho Iwai American Corp. v. M/V Sea Bridge*, 1991 AMC 2070, 1991 WL 182117 (D.Md., May 21, 1991) (involving a six-month delay).

 What these cases make clear is that the mere length of the delay is not dispositive. What counts is the moving party's *conduct* during the period of delay. That is why the cases all condition a finding of waiver on clear and convincing proof that the moving party has acted in a manner inconsistent with arbitration and has, thereby, prejudiced its opponent. What Winston did in this case between March 21, 1997 and December 11, 1997 provides convincing proof of neither

inconsistent behavior nor prejudice to Touton.

### 3. Winston Has Not Taken Action Inconsistent With Arbitration

 · Where waiver of a contractual right to seek arbitration is found, the waiving party has almost always taken some affirmative action inconsistent with arbitration; typically, either resort to the courts for relief, or active participation in litigation. In *Hoxworth v. Blinder, Robinson & Co., supra*, for example, the defendant did not seek a stay until its own motion to dismiss the complaint for failure to state a claim was denied, and plaintiffs' motion to compel discovery was granted. 980 F.2d at 925–26. By this time, defendant had also deposed all named plaintiffs. *Id*. Similarly, in *United States v. S.T.C. Construction Company*, 472 F.Supp. 1023, 1024 (E.D.Pa.1979), where waiver was found after an 18–month delay, the waiving defendant had filed an answer asserting a counterclaim without raising arbitration as a defense, and had engaged in "extensive discovery."

Maritime cases involving this issue are decided on the same basis. In *Graig Shipping Co. v. Midland Overseas Shipping Corp., supra*, the party found to have waived arbitration filed two actions, requested and received documents in discovery, and deposed its opponent's vice president. In *Cereal Mangimi, supra*, the District Court for the Eastern District of Virginia noted that the matter had "already proceeded through discovery."

Likewise, in cases not involving delay, the waiving party's use of the courts was also substantial. In *Bunge Edible Oil Corporation v. M/V Torm Rask*, 756 F.Supp. 261 (E.D.La.1991), waiver was found where a defendant "actively participated" in litigation, and moved for a stay less than a month before the scheduled trial. In *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 640 F.Supp. 882 (S.D.N.Y.1986), the court found

---

ston, however, represented on the record at oral argument that both her client and Touton are still well within their time to commence arbitration. In fact, as noted above Winston initiated arbitration the very next day. In any event, nei-

ther Touton nor Latif has cited any authority for the proposition that delay in actually initiating arbitration, considered apart from delay in seeking a stay to permit such initiation, constitutes a waiver.

a waiver where the defendant "participated in all aspects" of a trial, and moved for a stay only on appeal.

In the present case, the only thing Winston did by way of discovery between the date of Judge Rendell's March 26 Order and the date of this Stay Motion was attend some depositions and "open it s mail," *i.e.*, take possession of documents made available by Latif. Moreover, these depositions—all of the Rizcun Trader's crew—were sought not by Winston, but rather by Phibro, the original plaintiff and one time purchaser of the cocoa. And, in an affidavit attached to Latif's original Motion to Dismiss, counsel for Latif stated that even this limited discovery wasn't really necessary because the parties already had access to the information.[6] In sum, the totality of Winston's conduct falls far short of anything appearing the cases where waiver has been found.

Touton and Latif, argue, nonetheless, that Winston did act in a manner inconsistent with an intention to seek arbitration. They argue, in fact, that it was Winston's very *failure* to proceed that constituted conduct inconsistent with the right to arbitrate. Since discovery was already taking place between the cargo interests (Phibro & Touton) and Latif, Winston was able to "ride on Latif's coattails", obtaining and benefiting from discovery, while at the same time failing to file an answer or move for a stay. Winston's failure to initiate arbitration until April 9, 1998 is said to demonstrate its intent to stall; Touton argues that there is no reason Winston could not have filed for arbitration in February 1997, as soon as it was aware it would be sued.

It may well be that a party's passivity could, under some circumstances, form the basis for a finding of waiver. But this is not such a case. In her March 26, 1997 Order, Judge Rendell was careful to specify that the discovery she was permitting was only to preserve testimony from sources imminently bound for the high seas. She said nothing about the arbitrability of the action, or the Court's jurisdiction over the underlying merits, and cautioned the parties that resolution of these issues—already raised squarely by Latif—were not before the Court. Under these circumstances, mere participation by Winston in discovery that it did not even initiate could hardly be deemed binding acquiescence to this Court's jurisdiction over the substantive claims against it.

Moreover, Touton's "coattails" argument would leave a party like Winston with a totally unacceptable "Hobson's Choice." It would require Winston to choose between staying away from depositions permitted by Court order and not reading documents distributed by other parties, or risking a waiver of an otherwise clear right to demand arbitration.

The Court finds, therefore, that Winston took no action inconsistent with arbitration.

### 4. *Touton and Latif Were Not Prejudiced by Winston*

The filing of an answer and a counterclaim, or even participation in discovery, is not necessarily determinative of whether a party has waived its right to seek arbitration. *PaineWebber v. Faragalli, supra,* at 1069. Prejudice to the nonmoving party is also required. In fact, prejudice is the touchstone for determining whether the right to arbitration has been waived. *Id.; citing, Hoxworth v. Blinder, Robinson, supra,* at 980 F.2d at 925.[7]

Touton and Latif might have been prejudiced if they had been affirmatively led to

---

6. "I also take issue with the allegations in the Complaint that the vessel interests have not made any materials from the vessel available to opposing counsel. The vessel arrived on February 9. (*sic.* It did not set sail until after February 14, and actually arrived on March 8) It had been agreed that representatives of all parties, including their counsel, would attend onboard the vessel to conduct an inspection and to interview the ship's master. This inspection and interview were carried out and at the time of the interview, I distributed documents which were requested."

(March 24, 1997 Affidavit of Alfred J. Kuffler, paragraph 3).

7. The fact that the *PaineWebber v. Faragalli* Court cited *National Foundation for Cancer Research v. A.G. Edwards and Sons,* 821 F.2d 772 (D.C.Cir.1987), which, as Latif points out, considered prejudice only as one factor in determining waiver, is irrelevant, since it did not cite *A.G. Edwards* in support of that principle.

believe by Winston that the litigation would proceed in this Court. For example, In *J.D. Fegely v. Kline Iron & Steel Company, Inc.*, *supra*, waiver was found where the party seeking a stay had earlier explicitly represented to its opponent that it would not submit to arbitration. 1989 WL 71549 at *2–3. And the *PaineWebber v. Faragalli* Court noted as relevant "whether [the moving party] has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings." 61 F.3d at 1068, ftn. 4.

Here, although Winston did not specifically notify Touton or Latif of its intention to seek arbitration until it filed its Answer, it did assert such an intention clearly at that time, and never, thereafter did anything affirmatively inconsistent with that position. Winston's counsel is alleged to have told opposing parties that she was delaying filing an Answer because she was awaiting instructions from her client. If anything, such information should have heightened Touton's and Latif's sensitivity to the likelihood of a non-merits defense by Winston, not lulled them into a contrary assumption. Moreover, neither Touton nor Latif can say that they were unaware of the forum selection issues in this case. From the very outset of this litigation, Latif itself raised this issue and Touton (then Phibro) likewise briefed it in opposition.

Touton and Latif argue that they were prejudiced by Winston's access to the material they disclosed in discovery, but this is counter-intuitive, particularly as to Touton. Touton came to this Court seeking permission to engage in discovery. Having been granted this permission, Touton cannot now argue that it was prejudiced just because Winston became privy to the same information from Latif that Touton, itself, procured.

After the March 24, 1997 hearing before Judge Rendell, moreover, both Touton and Latif were very well aware that certain information was to become known to the parties in this case through discovery, and that the Court would eventually have to rule on the question of where this litigation should take place. Winston did not bring either of these issues to the Court. Phibro wanted the discovery. Latif wanted the case moved to London. Each of these issues would have been before the Court, regardless of when, or even if, Winston sought arbitration. It seems highly unlikely that Phibro, which sought the depositions and documents specifically because the ship's crew was about to disperse world-wide, would have foregone this discovery, simply because Winston decided to join Latif in trying to get this matter moved overseas.

Touton argues, finally, that it has been prejudiced by the fact that Winston raised a demurrage issue in its counterclaim. That is because Touton says it can defend this claim only by obtaining the deposition testimony of the United States Food and Drug Administration officials with whom Touton negotiated concerning the release of the Rizcun Trader's cargo. This testimony cannot be gotten in London arbitration because there is no discovery there, and the officials in question would be out of subpoena range for live testimony. While this argument had a superficial appeal when raised (indeed, the Court even inquired on the record during argument whether the problem might be alleviated if such discovery were to be permitted in the United States before the stay took effect), on further reflection we are not persuaded.

We begin with a fairly obvious point. If Winston had filed its Answer and Counterclaim within 20 days of being served with Phibro's complaint, and if there had been appended to such Answer and Counterclaim the very Stay Motion before the Court today, Touton would still have the same FDA discovery/testimony problem of which it now complains. With no chance to argue waiver, Touton would be on its way to London to defend the demurrage claim under their arbitration rules, not our Federal Rules of Civil Procedure. Unfortunately for Touton, that's the deal they bargained for in the Liner Booking Note.

Next, one wonders why Touton has done nothing to preserve the testimony of the FDA officials during the almost six months that have already passed since Winston first asserted its demurrage claim last October, or even the four months since the Stay Motion

was filed. There does not appear to be anything in the record of this case that would have prevented such discovery, especially since it would have been totally unrelated to any of the claims against Latif that were, until a few weeks ago, still subject to the outstanding Motion to Dismiss.

Finally, Winston cites authority for the proposition that a stay is a stay is a stay. The Court cannot stay a matter pending arbitration, while at the same time permitting FRCP discovery to continue on one of the very issues to be arbitrated. In *Corpman v. Prudential–Bache Securities, Inc.*, 907 F.2d 29 (3rd Cir.1990), the District Court vacated a stay it had previously issued. The stay was vacated because the District Court believed that Prudential–Bache, the party that had successfully moved for the stay pending arbitration, was now acting in bad faith by not permitting FRCP discovery to proceed during the stay period. The Third Circuit ordered the stay reinstated, stating, "Where an action has been stayed pending arbitration, a district court may not permit the parties to conduct discovery under the Federal Rules of Civil Procedure." *Id.* at 30. Therefore, the failure of Prudential to permit discovery could not be evidence of bad faith.

In this Court, similar precedent can be found. In *Harry F. Ortlip Co. v. Hyman Construction Co.*, 126 F.R.D. 494, 497 (E.D.Pa.1989), Judge Van Antwerpen wrote that allowing discovery to proceed during the period of a stay pending arbitration should be permitted only under "extraordinary circumstances." The reason for the rule is based on the very right to arbitrate, itself. If a party has bargained for the right to proceed in a forum other than the District Court, that party has also bargained for the rules of procedure of that forum. If the other side loses discovery rights under those procedures "he accepted the risk of being placed in that position when he accepted the arbitration clause in the Agreement." *Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876, 880–81 (E.D.Pa.1976), appeal dismissed, 549 F.2d 795 (3rd Cir.1977).

For the reasons stated above, even if this Court had the power to allow discovery under the "extraordinary circumstances" test (a power that may not even exist after the Third Circuit's opinion in *Corpman*), it is disinclined to do so. There are no extraordinary circumstances here.[8]

IV. *Conclusion*

For all the reasons stated above, the Court finds that Winston is entitled to the stay it seeks. Accordingly, we issue the following

### ORDER

AND NOW, this 24th day of April, 1998, upon consideration of the Motion of Defendant Winston Shipping Corp. To Stay Proceedings Pending Arbitration and the responses thereto filed by Touton, S.A., and Latif Maritime Ltd., it is hereby ORDERED that this civil action is STAYED pending the outcome of London arbitration pursuant to the Liner Booking Note.

It is further ORDERED that the parties advise the Court, no less frequently than once every sixty days following this ORDER, of the status and progress of said arbitration.

---

8. Postponing the effective date of a stay order to allow discovery is no different, of course, from issuing the order while allowing discovery to continue. Either way, Touton would be deprived of the right for which it bargained—to conduct this litigation under the rules of London arbitration.