OPINION OF THE COURT
Cohen, J.
In this action to recover damages for defamation, we are asked to determine whether the applicable statute of limitations bars the consideration of certain allegedly defamatory statements posted on a publicly accessible Internet weblog—or “blog”— dedicated to the local community issues of Wawayanda, New York, located in Orange County, and on the local newspaper’s website. We are also asked to determine, inter alia, whether the plaintiff was required to plead special damages regarding published accusations on these websites that he was responsible for dumping a severed horse head into the swimming pool at a residence belonging to a member of the Town Board of the Town of Wawayanda (hereinafter the Town Board).
For the reasons stated below, we disagree with the Supreme Court’s determination that, absent a particularized allegation of special damages, the third cause of action was not actionable, but otherwise agree with its conclusions with respect to the first, second, and fourth causes of action. Accordingly, we modify the order appealed from.
Factual and Procedural Background
The defendant Wayne Skinner, a former Town Supervisor of the Town of Wawayanda, and his wife, the defendant Karen Skinner (hereinafter together the Skinner defendants), were involved in a number of Town policy disagreements with the plaintiff, David LeBlanc. Wayne Skinner was elected to his position as a Democrat. The plaintiff, a Wawayanda businessman, attended numerous Town Board meetings, voicing his concerns *205 over a variety of issues, including property taxes, and donated money to one of Wayne Skinner’s Republican political rivals.
Nonparty Gail Soro was one of Wayne Skinner’s colleagues, and a Wawayanda Town Board member. Soro likewise was an elected Democrat. In July 2006, Soro discovered a severed horse head in her swimming pool. It was never determined who was responsible for the incident. Nonetheless, as could be expected after any incident with such cinematic bravado,* public comment ensued. Of relevance here were a number of blog entries posted on a website allegedly dedicated to community issues and local government, and a number of comments on the local newspaper’s website. These blog entries and comments accused the plaintiff of being responsible for the horse head incident.
The plaintiff filed a summons and complaint on July 28, 2008, commencing this action against Michael Hawkins, also known as “wayguy,” as well as against “John Doe (‘johnnySOO’),” and “John Doe (‘wawayandafirst’),” referencing the relevant blog profiles or monikers used by the individuals who posted the allegedly defamatory comments. Neither of the Skinner defendants was specifically identified by name in the original complaint. However, on September 18, 2008, Wayne Skinner was served with copies of the original summons and complaint as “John Doe (‘johnny500’)” and “John Doe (‘wawayandafirst’).”
On October 20, 2008, the plaintiff filed an amended verified complaint. The amended verified complaint specifically identified Wayne Skinner as a defendant, and added Karen Skinner as a defendant. Copies of a supplemental summons and the amended verified complaint were served upon Karen Skinner on October 28, 2008.
In the amended complaint, the plaintiff alleged that, with the assistance of Hawkins, the Skinner defendants posted several defamatory statements on the Internet regarding the plaintiff. More specifically, the first and second causes of action in the amended verified complaint alleged that Hawkins, at the request and direction of the Skinner defendants, posted two allegedly *206 defamatory statements regarding the plaintiff on August 29, 2007, and October 6, 2007, respectively, on the now-defunct website www.wawayandafirst.blogspot.com (hereinafter the Wawayandafirst blogspot). In the third cause of action, the plaintiff alleged that the defendants had posted the following comment on October 30, 2007, at www.forums.recordonline.com, a site run by the area newspaper (hereinafter the newspaper site): “We all know who was behind the Horse Head . . . there is only one man around town dumb enough, violent enough and with a vendetta to do that. . . Dave LeBlanc ... I hope all this negative publicity on him destroys his business.” The fourth cause of action alleged that the defendants posted the following comments on the newspaper site on October 30, 2007: “Dave LeBlanc is a terrorist” and “[w]ho was the one who threw the horse head in Gail’s pool? . . . check it out: . . . wawayandafirstblogspot.com.”
Hawkins served a verified answer, asserting, inter alia, a cross claim against the Skinner defendants, in which he alleged that he was the “agent and servant of the Skinner Defendants who performed actions” at their “request and direction.” The Skinner defendants together answered the complaint, asserting, inter alia, an affirmative defense based on the statute of limitations, and separately answered Hawkins’s cross claim, denying the allegations thereof. Discovery ensued, including party depositions. At his deposition, Hawkins testified that the Skinner defendants were his aunt and uncle, and that they directed the creation and maintenance of the relevant blog profiles on the Wawayandafirst blogspot and the newspaper site. Hawkins also testified that the Skinner defendants controlled the subject matter of the postings, and that the Skinner defendants “shared access” to these created profiles. During their own respective depositions, the Skinner defendants disputed the allegations made by Hawkins, and contended that he acted of his own accord.
The plaintiff moved for summary judgment, among other things, on the complaint and dismissing the Skinner defendants’ fourth affirmative defense, which asserted that the first and second causes of action were barred by the applicable one-year statute of limitations set forth in CPLR 215 (3). Hawkins opposed the motion. The Skinner defendants also opposed the motion, and cross-moved for summary judgment dismissing the complaint insofar as asserted against them, contending that all four causes of action insofar as asserted against them were *207 time-barred. The Skinner defendants also contended that, since this is a defamation action, the plaintiff was required to allege special damages. They then submitted that the plaintiff had failed to allege special damages with particularity, and, thus, the defamation causes of action could not be sustained. The plaintiff opposed the cross motion, contending that the Skinner defendants were timely served with process. He further argued that the defamatory statements at issue were defamatory per se and, thus, the pleading of special damages was not required.
As relevant to the instant appeal, the Supreme Court, in an order dated January 28, 2011, determined that the third and fourth causes of action could not be sustained because the facts alleged therein did not constitute defamation per se, and the plaintiff failed to allege special damages with particularity. The plaintiff appeals from so much of the Supreme Court’s order as granted those branches of the Skinner defendants’ motion which were for summary judgment dismissing the third and fourth causes of action insofar as asserted against them.
The Supreme Court also denied those branches of the Skinner defendants’ cross motion which were for summary judgment dismissing, as time-barred, the first and second causes of action insofar as asserted against them. The Supreme Court found that copies of the summons and complaint had been timely served upon Wayne Skinner, as he was served with copies of the initial summons and complaint within 120 days of its timely filing. With regard to Karen Skinner, the court noted that it was undisputed that the first and second causes of action had not been timely interposed against her, but agreed with the plaintiff that Karen Skinner might be held vicariously liable for the publication of the subject statements by Hawkins and, therefore, had a unity of interest with him that was sufficient to avoid dismissal of the causes of action against her. The Skinner defendants cross-appeal from so much of the Supreme Court’s order as denied those branches of their motion which were for summary judgment dismissing, as time-barred, the first and second causes of action insofar as asserted against them.
Hawkins filed no brief with respect to the appeal or cross appeal.
The Statute of Limitations
The Skinner defendants contend that the Supreme Court erred in denying those branches of their motion which were for summary judgment dismissing, as time-barred, the first and second causes of action insofar as asserted against them.
*208 At the outset, the Supreme Court properly concluded that the first and second causes of action were timely interposed against Wayne Skinner. The original complaint named, as defendants, “Michael Hawkins, also known as ‘wayguy’ (‘Way-guy’), along with John Doe ‘johnny500’ (‘Johnny500’) and John Doe ‘wawayandafirst’ (‘Wawayandafirst’).” The amended complaint, which named Wayne Skinner and Karen Skinner as defendants, noted that Hawkins was “also known as ‘Wayguy’ and ‘JohnnySOO.’ ” Accordingly, the remaining John Doe named by the original complaint—“John Doe ‘wawayandafirst’ (‘Wawayandafirst’)”—referred to Wayne Skinner, who was alleged in the complaint to be the individual responsible for issuing the Wawayandafirst blog posts. Under these circumstances, the original complaint was sufficient to have apprised Wayne Skinner that he was one of the intended defendants (see Bum-pus v New York City Tr. Auth., 66 AD3d 26, 30 [2009]; Rogers v Dunkirk Aviation Sales & Serv., Inc., 31 AD3d 1119, 1120 [2006]). Thus, the original complaint must be deemed to have identified Wayne Skinner as one of the defendants (see CPLR 1024; Rogers v Dunkirk Aviation Sales & Serv., Inc., 31 AD3d at 1120), and the action was timely commenced against him upon the filing of the summons and complaint (see CPLR 304 [a]). Moreover, copies of the summons and complaint were timely served upon Wayne Skinner within 120 days after the filing (see CPLR 306-b) and, thus, the Supreme Court properly denied that branch of the Skinner defendants’ motion which was for summary judgment dismissing, as time-barred, the first and second causes of action insofar as asserted against Wayne Skinner.
The Skinner defendants also moved for summary judgment dismissing, as time-barred, the first and second causes of action insofar as asserted against Karen Skinner. Clearly, at the time that Karen Skinner was served with copies of the supplemental summons and amended complaint on October 28, 2008, the defamation claims set forth in the first and second causes of action, which were premised on statements posted on August 29, 2007, and October 6, 2007, were in fact time-barred (see CPLR 215 [3]). Karen Skinner thus met her burden of establishing, prima facie, that the statute of limitations had expired prior to the commencement of the action against her, at which point the burden shifted to the plaintiff to establish the applicability of the relation-back doctrine (see Xavier v RY Mgt. Co., Inc., 45 AD3d 677, 678 [2007]).
*209 In holding that the first and second causes of action were timely interposed against Karen Skinner, the Supreme Court, in effect, concluded that the relation-back doctrine was applicable (see CPLR 203 [b]). Under the relation-back doctrine, a plaintiff may interpose a cause of action against a person or entity after the statute of limitations has expired, provided that the plaintiff had timely commenced the action against another defendant, served process upon that other defendant within the applicable statutory period, and established that the defendant previously named and served was “united in interest” with the person or entity sought to be added as a defendant (CPLR 203 [b]). This Court has held that, in order to determine whether two defendants are united in interest—such that a plaintiff may invoke the relation-back doctrine to add a new defendant—it must be shown that
“(1) both claims arose out of the same conduct, transaction or occurrence, (2) the new party is ‘united in interest’ with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well” (Brock v Bua, 83 AD2d 61, 69 [1981] [citations omitted]).
Subsequent to the issuance of this Court’s decision in Brock, the Court of Appeals held that a plaintiffs mistake need not be “excusable” for the relation-back doctrine to apply (see Buran v Coupal, 87 NY2d 173, 178-182 [1995]). In addition, whether parties are united in interest generally is a question of law, not a question of fact (see Connell v Hayden, 83 AD2d 30, 43 [1981]). However, if the nature of the jural relationship between the defendants is disputed, then a question of fact is presented (see id. at 44).
In the instant matter, the key to the application of the relation-back doctrine is the determination of whether Karen Skinner is united in interest with an original defendant, so that, by reason of that relationship, she can be “charged with such notice of the institution of the action that [she] will not be prejudiced in maintaining [her] defense on the merits” (Brock v Bua, 83 AD2d at 69). Here, the plaintiff contends that Karen *210 Skinner and. her nephew Michael Hawkins shared the jural relationship of principal and agent.
Defendants are united in interest with one another only when their relationship with each other is such that their interest “in the subject-matter [of the action] is such that [the defendants] stand or fall together and that judgment against one will similarly affect the other” (Prudential Ins. Co. v Stone, 270 NY 154, 159 [1936]). “[T]he question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff’ (Connell v Hayden, 83 AD2d at 42-43). However, defendants are not united in interest if there is the mere possibility that the new party could have a different defense than the original party (id. at 42, citing Stevens v Young, 272 App Div 784, 785 [1947]). Accordingly, joint tortfeasors are generally not united in interest, since they frequently have different defenses, in that one tortfeasor usually will seek to show that he or she is not at fault, but that it was the other tortfeasor who is liable (see Connell v Hayden, 83 AD2d at 45, citing Maguire v Yellow Taxicab Corp., 253 App Div 249, 251 [1938], affd 278 NY 576 [1938]). However, joint tortfeasors will be deemed to be united in interest where one is vicariously liable for the other (see Connell v Hayden, 83 AD2d at 45), such as where one tortfeasor is the agent of the other.
Accordingly, the parties are united in interest where there is a jural or legal relationship giving rise to potential vicarious liability. “Underlying the doctrine of vicarious liability ... is the notion of control. The person in a position to exercise some general authority or control over the wrongdoer must do so or bear the consequences” (Kavanaugh v Nussbaum, 71 NY2d 535, 546 [1988]). Agency is a jural relationship between a principal and an agent, “which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act” (Maurillo v Park Slope U-Haul, 194 AD2d 142, 146 [1993]). While here, the Skinner defendants and Hawkins are related, as Hawkins is the Skinner defendants’ nephew, it is not any such intrafamilial relationship that gives rise to a purported agency relationship (see Struebel v Fladd, 75 AD3d 1164, 1166 [2010]; Maurillo v Park Slope U-Haul, 194 AD2d at 146). However, the fact that Hawkins is related to the Skinner defendants does not ipso facto defeat the possibility of an agency relationship, as *211 “members of a family may enter into a gratuitous agency relationship where there is no evidence of any payment incident to the agency relationship” (Maurillo v Park Slope U-Haul, 194 AD2d at 147).
Here, the plaintiff adduced sufficient facts which clearly raise a triable issue as to whether Hawkins was acting as an agent on behalf of the Skinner defendants. In his sworn testimony and averments, Hawkins explained that he “would post comments verbatim from Wayne or Karen Skinner” and that they asked him to post messages under the various pseudonyms set forth above. While Hawkins did “not recall posting the alleged defamatory statements,” he did not specifically deny posting them. Such an equivocal averment does not resolve the factual discrepancy as to whether Hawkins posted the alleged defamatory statements, and did so at the Skinner defendants’ request.
In a case such as this, where the jural relationship alleged is that of principal and agent, “unity of interest does not turn upon whether the actual wrongdoer or the person or entity sought to be charged vicariously was served first” (Matter of Parker v Port Auth. of N.Y. & N.J., 113 AD2d 763, 769 [1985] [internal quotation marks omitted]; see Connell v Hayden, 83 AD2d 30 [1981]). At trial, the plaintiff may be required to establish his right to recovery against Karen Skinner, or perhaps both of the Skinner defendants, upon a theory of vicarious liability and, thus, will be obligated to prove that the wrongdoing which forms the basis of the action was committed within the scope of the Skinner defendants’ “business.” The defendants will likely continue to point fingers at each other, and the Skinner defendants will likely continue to deny that they are vicariously liable for any action taken by Hawkins. However, a defense that Hawkins’s alleged conduct in posting the subject statements exceeded the scope of his alleged agency relationship with the Skinner defendants does not go to the merits of the plaintiff s defamation claims. Instead, it is a defense which “puts the jural relationship itself at issue,” and “the law defers its determination to the trial at which time the defendant asserting it will be discharged by the substantive defense rather than by the Statute of Limitations” (Matter of Parker v Port Auth. of N.Y.& N.J., 113 AD2d at 769 [citation and internal quotation marks omitted]).
On this summary judgment motion, we view the evidence in the light most favorable to the plaintiff, as the nonmoving party, *212 and afford him the benefit of every favorable inference (see Ruiz v Griffin, 71 AD3d 1112, 1115 [2010]; Franklin v 2 Guys From Long Pond, Inc., 50 AD3d 846 [2008]). Moreover, a “motion for summary judgment ‘should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility’ ” (Ruiz v Griffin, 71 AD3d at 1115, quoting Scott v Long Is. Power Auth., 294 AD2d 348, 348 [2002]). “Resolving questions of credibility, determining the accuracy of witnesses, and reconciling the testimony of witnesses are for the trier of fact” (Gille v Long Beach City School Dist., 84 AD3d 1022, 1023 [2011]; see Republic Long Is., Inc. v Andrew J. Vanacore, Inc., 29 AD3d 665 [2006]; Harty v Kornish Distribs., 119 AD2d 729 [1986]).
Applying these principles here, we conclude that a triable issue of fact exists as to whether the first and second causes of action in the amended complaint “related back” to the date of the timely filing of the original complaint against Hawkins (see CPLR 203 [c]; 215 [3]; see also Mondello v New York Blood Ctr.—Greater N.Y. Blood Program, 80 NY2d 219 [1992]; Lancaster v Town of E. Hampton, 54 AD3d 906 [2008]; Brock v Bua, 83 AD2d 61 [1981]; Assad v City of New York, 238 AD2d 456, 457 [1997]; Sargent v City of New York, 128 AD2d 693 [1987]).
Accordingly, the Supreme Court properly denied those branches of the Skinner defendants’ motion which were for summary judgment dismissing, as time-barred, the first and second causes of action insofar as asserted against them.
Defamation Per Se
In each of the four causes of action, the plaintiff contended that the “[defendants libeled Plaintiff and committed an act of defamation per se.” The Supreme Court concluded that the defendants’ alleged conduct, as described in the third and fourth causes of action, did not constitute defamation per se and, thus, that the plaintiff’s failure to plead special damages with particularity required dismissal of those causes of action. The Supreme Court further concluded that certain epithets used to describe the plaintiff, as set forth in the fourth cause of action, were mere opinion and, hence, not actionable. The plaintiff appeals from that portion of the Supreme Court’s order which granted those branches of the Skinner defendants’ motion which were for summary judgment dismissing the third and fourth causes of action insofar as asserted against them, based on the plaintiffs failure to plead special damages with particularity or *213 properly allege that certain statements were fact rather than opinion.
Contrary to the plaintiffs contention, the Supreme Court properly granted that branch of the Skinner defendants’ motion which was for summary judgment dismissing the fourth cause of action insofar as asserted against them. In the fourth cause of action, the plaintiff alleged that the defendants posted two separate comments on the newspaper site on the same date. The first comment was that “Dave LeBlanc is a terrorist.” The second comment asked, rhetorically, “Who was the one who threw the horse head in Gail’s pool? . . . check it out: . . . wawayandafirstblogspot.com. ’ ’
Internet forums are venues where citizens may participate and be heard in free debate involving civic concerns. It may be said that such forums are the newest form of the town meeting. We recognize that, although they are engaging in debate, persons posting to these sites assume aliases that conceal their identities or “blog profiles.” Nonetheless, falsity remains a necessary element in a defamation claim and, accordingly, “only statements alleging facts can properly be the subject of a defamation action” (600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 139 [1992], cert denied 508 US 910; see Gross v New York Times Co., 82 NY2d 146, 153 [1993]). Within this ambit, the Supreme Court correctly determined that the accusation on the newspaper site that the plaintiff was a “terrorist” was not actionable. Such a statement was likely to be perceived as “rhetorical hyperbole, a vigorous epithet” (Greenbelt Cooperative Publishing Assn., Inc. v Bresler, 398 US 6, 14 [1970]; see Milkovich v Lorain Journal Co., 497 US 1 [1990]; Immuno AG. v Moor-Jankowski, 77 NY2d 235, 254 [1991], cert denied 500 US 954 [1991]). This conclusion is especially apt in the digital age, where it has been commented that readers give less credence to allegedly defamatory Internet communications than they would to statements made in other milieus (see Sandals Resorts Intl. Ltd. v Google, Inc., 86 AD3d 32, 43-44 [2011], quoting Jennifer O’Brien, Note, Putting a Face to a [Screen] Name: The First Amendment Implications of Compelling ISPS to Reveal the Identities of Anonymous Internet Speakers in Online Defamation Cases, 70 Fordham L Rev 2745, 2774-2775 [2002]). Accordingly, we conclude that this statement constituted an expression of opinion, and, as such, is nonactionable.
Turning to the other posting described in the fourth cause of action, it is not clear on the face of the posting whom the poster *214 was accusing of dumping a horse head in Gail Soro’s pool, as the posting is essentially just a cross-reference to the Wawayandafirst blogspot. Since the statements contained on the Wawayandafirst blogspot form the basis of the first and second causes of action, the mere reference to those statements is duplicative of those causes of action (see New York Univ. v Continental Ins. Co., 87 NY2d 308, 320 [1995]). Therefore, the Supreme Court correctly granted that branch of the Skinner defendants’ motion which was for summary judgment dismissing the fourth cause of action insofar as asserted against them.
However, the Supreme Court erred in granting that branch of the Skinner defendants’ motion which was for summary judgment dismissing the third cause of action insofar as asserted against them. While a plaintiff alleging defamation generally must plead and prove that he or she has sustained special damages (see Rufeh v Schwartz, 50 AD3d 1002, 1003 [2008]; Liberman v Gelstein, 80 NY2d 429, 434-435 [1992]), any written article is “actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society” (Sydney v MacFadden Newspaper Publ. Corp., 242 NY 208, 211-212 [1926]; see Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 379 [1977], cert denied 434 US 969 [1977]; Donati v Queens Ledger Newspaper Group, 240 AD2d 696 [1997]). Our society has long recognized that when statements fall within one of these established categories of per se defamation, “the law presumes that damages will result, and they need not be alleged or proven” (Liberman v Gelstein, 80 NY2d 429, 435 [1992]). Indeed, important social values underlie the law of defamation, as “[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation” (Rosenblatt v Baer, 383 US 75, 86 [1966]). The published allegation that the plaintiff put a severed horse head in a Town Board member’s swimming pool constituted defamation per se under this standard and, therefore, did not require the plaintiff to plead special damages (see Donati v Queens Ledger Newspaper Group, 240 AD2d 696 [1997]). Moreover, the accusation that the plaintiff placed a horse head in a political rival’s pool, if true, describes conduct that would constitute serious crimes. A false published allegation that a person committed a serious crime is also a ground for asserting a cause of action to recover damages for defamation per se (see Geraci v Probst, 15 NY3d 336, 344 *215 [2010]; Knutt v Metro Intl., S.A., 91 AD3d 915, 916 [2012]), thus relieving the plaintiff from pleading special damages.
Accordingly, the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants Wayne Skinner and Karen Skinner which was for summary judgment dismissing the third cause of action insofar as asserted against them, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from.
Dillon, J.P., Angiolillo and Florio, JJ., concur.
Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants Wayne Skinner and Karen Skinner which was for summary judgment dismissing the third cause of action insofar as asserted against them, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

 While the discovery of any deliberately placed mutilated animal carcass in a family swimming pool would be shocking and noteworthy, the choice of a severed horse head immediately evokes to many the infamous scene from Mario Puzo’s novel, “The Godfather,” as immortalized in the film directed by Francis Ford Coppola. The scene, probably one of the most iconic in cinematic history, has come to exemplify an act of intimidation through violence, a reminder of power, and a warning that a request or “offer” from a Godfather or leader of an organized crime family should not be “refused.”